United States Court of Appeals,

Fifth Circuit.

Nos. 94-20084, 94-20694.

David F. COURY, Plaintiff-Appellee, Cross-Appellant,

v.

Alain PROT, Defendant-Appellant, Cross-Appellee.

June 19, 1996.

Appeals from the United States District Court for the Southern District of Texas.

Before GARWOOD, SMITH and DENNIS, Circuit Judges.

DENNIS, Circuit Judge:

In this case David Coury, a citizen of California, sued Alain Prot, a dual citizen of the United States and France, in a Texas state court to recover for damages resulting from breach of contract and fraud. Prot removed the action to the federal district court pleading that he was a dual citizen of France and the United States domiciled in France and therefore entitled to remove this action under the alienage provision of diversity jurisdiction, 28 U.S.C. § 1332(a)(2). After a jury trial, the trial court dismissed Coury's fraud claim but submitted the balance of his case to the jury, which returned a verdict awarding Coury $164,500 including attorney's fees plus post-judgment interest based on Prot's breach of contract. Subsequently, the court denied Prot's post verdict motions and granted Coury's motion for turnover of two parcels of Prot's Texas property in satisfaction of the trial court's judgment implementing the jury award.

Prot appealed from the main judgment of the trial court and from its turnover order contending: (1) the district court lacked

diversity jurisdiction under the alienage provision because when the suit was commenced and removed Prot was a dual citizen of the United States and France domiciled in France; (2) the district court erred in denying Prot's post verdict motion for leave to amend his answer to add the affirmative defense that the contract sued upon by Coury was illegal; (3) Prot's Texas parcels of property were exempt from turnover and forced sale under the state constitutional and statutory homestead exemptions.

Coury filed a cross appeal seeking pre-judgment interest and, in the event of reversal of the breach of contract award, to overturn the trial court's dismissal of his fraud claim.

Upon its initial consideration of the appeals, a different panel of this court concluded that based on the record presented for its review it could not determine whether Prot's domicile at the time the complaint was filed was in France or in Texas. For purposes of diversity jurisdiction, only the American nationality of a dual national is recognized. *Action S.A. v. Marc Rich & Co., Inc.,* 951 F.2d 504, 507 (2nd Cir.1991) *cert. denied,* 503 U.S. 1006, 112 S.Ct. 1763, 118 L.Ed.2d 425 (1992); *see also Sadat v. Mertes,* 615 F.2d 1176 (7th Cir.1980) ("only the American nationality of the dual citizen should be recognized under 28 U.S.C. § 1332(a)."). An American national, living abroad, cannot sue or be sued in federal court under diversity jurisdiction, 28 U.S.C. § 1332, unless that party is a citizen, i.e. domiciled, in a particular state of the United States. 1 J. Moore, Moore's Federal Practice § 0.74[4] (1996). Thus, Prot's initial claim of diversity jurisdiction under the alienage provision was invalid. Furthermore, if Prot was found

to be domiciled abroad, he would not be a citizen of any state and diversity of citizenship would also fail.  However, if the district court determined that Prot was domiciled in Texas at the time the suit was filed and removed, although removal may have been improper, subject matter jurisdiction would not be lacking.  *Coury v. Prot,* slip op. at 2, 3, 40 F.3d 385 (5th Cir. Nov. 3, 1994) (unpublished per curiam) (citing *Grubbs v. General Electric Credit Corp.,* 405 U.S. 699, 702, 92 S.Ct. 1344, 1347, 31 L.Ed.2d 612 (1972)).  Accordingly, the panel remanded the case to the district court for it to determine whether subject matter jurisdiction existed, with directions to vacate its judgment if jurisdiction was lacking or to return the case to this court if jurisdiction existed.  *Coury v. Prot,* slip op., 40 F.3d 385 (5th Cir.1994) (unpublished per curiam).

On remand, the trial court conducted an evidentiary hearing, determined that Prot was domiciled in Texas when the suit was filed in state court in May, and removed in June, of 1992, and that jurisdiction existed.  The trial court returned the case to this court.

## Jurisdiction

The district court correctly determined that subject matter and diversity of citizenship jurisdiction exists.  Prot was domiciled in Texas when the state court action was commenced and when he removed the case to federal court.  Although in 1992 Prot had physically moved himself, his family and his business to France, he had not formed an intention to remain there.

Article III, § 2 of the Constitution provides that the

judicial power of the United States shall extend, *inter alia,* to controversies "between Citizens of Different States" and to controversies "between a State, or the Citizens thereof, and foreign States, Citizens or Subjects." These provisions constitute the authority for the grant of "diversity" and "alienage" jurisdiction, respectively. 1 J. Moore, Moore's Federal Practice § 0.71[1] (1996).

It is axiomatic that the federal courts have limited subject matter jurisdiction and cannot entertain cases unless authorized by the Constitution and legislation. *Id.* at 5.-1]. The parties can never consent to federal subject matter jurisdiction, and lack of such jurisdiction is a defense which cannot be waived. Fed.R.Civ.P. 12(h)(3); *See City of Indianapolis v. Chase Nat'l Bank,* 314 U.S. 63, 76, 62 S.Ct. 15, 20, 86 L.Ed. 47 (1941). Accordingly, there is a presumption against subject matter jurisdiction that must be rebutted by the party bringing an action to federal court. *See, e.g. Strain v. Harrelson Rubber Co.,* 742 F.2d 888, 889 (5th Cir.1984); 1 J. Moore, Moore's Federal Practice § 0.71[5.-1] (1996).

What makes a person a citizen of a state? The fourteenth amendment to the Constitution provides that: "All persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the State wherein they reside." United States Const. amend. XIV, § 1. However, "reside" has been interpreted to mean more than to be temporarily living in the state; it means to be "domiciled" there. Thus, to be a citizen of a state within the meaning of the diversity

provision, a natural person must be both (1) a citizen of the United States, and (2) a domiciliary of that state. Federal common law, not the law of any state, determines whether a person is a citizen of a particular state for purposes of diversity jurisdiction. 1 J. Moore, Moore's Federal Practice, § 0.74[1] (1996); *e.g., Mas v. Perry,* 489 F.2d 1396, 1399 (5th Cir.) *cert. denied,* 419 U.S. 842, 95 S.Ct. 74, 42 L.Ed.2d 70 (1974).

Consistent with general principles for determining federal jurisdiction, diversity of citizenship must exist at the time the action is commenced. *Newman-Green, Inc. v. Alfonzo-Larrain,* 490 U.S. 826, 830, 109 S.Ct. 2218, 2221, 104 L.Ed.2d 893 (1989). In cases removed from state court, diversity of citizenship must exist both at the time of filing in state court and at the time of removal to federal court. *See, e.g., Kanzelberger v. Kanzelberger,* 782 F.2d 774, 776 (7th Cir.1986). If diversity is established at the commencement and removal of the suit, it will not be destroyed by subsequent changes in the citizenship of the extant parties. *Smith v. Sperling,* 354 U.S. 91, 93 n. 1, 77 S.Ct. 1112, 1114 n. 1, 1 L.Ed.2d 1205 (1957); *Mollan v. Torrance,* 22 U.S. (9 Wheat.) 537, 539, 6 L.Ed. 154 (1824); 1 J. Moore, Moore's Federal Practice, § 0.74[1] (1996).

The lack of subject matter jurisdiction may be raised at any time during pendency of the case by any party or by the court. Fed.R.Civ.P. 12(h)(3). Moreover, the Supreme Court has held that a party cannot waive the defense and cannot be estopped from raising it. *E.g., Insurance Corp of Ireland v. Compagnie des Bauxites de Guinee,* 456 U.S. 694, 102 S.Ct. 2099, 72 L.Ed.2d 492

(1982); *Owen Equip. & Erection Co. v. Kroger,* 437 U.S. 365, 98 S.Ct. 2396, 57 L.Ed.2d 274 (1978). Obviously, these principles can result in a tremendous waste of judicial and private resources. The general reaction is that this waste is simply a price that must be paid for federalism. 1 J. Moore, Moore's Federal Practice § 0.74[1] (1996). Some cases cry out for an exception to the rules, for example, when a party who invokes federal jurisdiction recants his original jurisdictional allegations or "discovers" that there was no diversity after all after suffering a loss on the merits. *Id.* So far, however, the traditional rule stands firm despite the urging of commentators for doctrines of estoppel or waiver to bar litigants from "playing fast and loose with the judicial machinery" and using the federal courts' limited subject matter jurisdiction in bad faith. *Id.* at n. 29. A few circuits have demonstrated a willingness to do so only to be repudiated by intervening Supreme Court decisions. *American Fire & Casualty Co. v. Finn,* 341 U.S. 6, 16-18, 71 S.Ct. 534, 541-542, 95 L.Ed. 702 (1951); *City of Brady, Texas v. Finklea,* 400 F.2d 352, 357-358 (5th Cir.1968); *Di Frischia v. New York Cent. R.R.,* 279 F.2d 141, 141-144 (3rd Cir.1960); *Klee v. Pittsburgh & W. Va. Ry. Co.,* 22 F.R.D. 252, 252-255 (W.D.Pa.1958).

Jurisdictional matters are to be decided by the court, although the court may, in its discretion, submit to the jury contested factual issues involving the presence of diversity of citizenship, to be used as an advisory determination. *E.g. Har-Pen Truck Lines, Inc. Mills,* 378 F.2d 705 (5th Cir.1967). As long as the trial court applies the correct standard of law, its findings

as to the citizenship of the parties will be upheld on appeal unless they are clearly erroneous. Fed.R.Civ.P. 52(a); *see, e.g., Village Fair Shopping Center Co. v. Sam Broadhead Trust,* 588 F.2d 431 (5th Cir.1979) (fact finding regarding principal place of business of corporation not clearly erroneous); 1 J. Moore, Moore's Federal Practice § 0.74[1] (1996).

In making a jurisdictional assessment, a federal court is not limited to the pleadings; it may look to any record evidence, and may receive affidavits, deposition testimony or live testimony concerning the facts underlying the citizenship of the parties. *See, e.g. Jones v. Landry,* 387 F.2d 102 (5th Cir.1967); 1 J. Moore, Moore's Federal Practice § 0.74[1] (1996). The court has wide, but not unfettered, discretion to determine what evidence to use in making its determination of jurisdiction. *See Ray v. Bird & Son & Asset Realization Co.,* 519 F.2d 1081 (5th Cir.1975).

A person cannot be a "citizen" of a state unless she is also a citizen of the United States. *See e.g., Newman-Green, Inc. v. Alfonzo-Larrain,* 490 U.S. 826, 109 S.Ct. 2218, 104 L.Ed.2d 893 (1989); *Mas v. Perry,* 489 F.2d 1396 (5th Cir.) *cert. denied,* 419 U.S. 842, 95 S.Ct. 74, 42 L.Ed.2d 70 (1974). A United States citizen who is domiciled in a state is a citizen of that state. *See Robertson v. Cease,* 97 U.S. 646, 648-650, 24 L.Ed. 1057 (1878). Thus, with few exceptions, state citizenship for diversity purposes is regarded as synonymous with domicile. *E.g., Rodriguez-Diaz v. Sierra-Martinez,* 853 F.2d 1027 (1st Cir.1988); 1 J. Moore, Moore's Federal Practice § 0.74[3] n. 3. Accordingly, it has been held consistently that a diversity suit may not be maintained under 28

U.S.C. § 1332(a)(1) by or against a United States citizen who is domiciled in a foreign country, for a resident of a foreign country is not necessarily a citizen thereof. *Smith v. Carter,* 545 F.2d 909 (5th Cir.) *cert. denied,* 431 U.S. 955, 97 S.Ct. 2677, 53 L.Ed.2d 272 (1977). Moreover, an American living abroad is not by virtue of that domicile a citizen or subject of the foreign state in which he resides so as to permit invocation of the alienage jurisdiction prescribed in 28 U.S.C. § 1332(a)(2) of the Judicial Code. 13B Wright-Miller-Cooper, Federal Practice & Procedure § 3621 (1984).

Furthermore, there is an emerging consensus among courts that, for a dual national citizen, only the American citizenship is relevant for purposes of diversity under 28 U.S.C. § 1332. Consequently, diversity jurisdiction may be properly invoked only when a dual citizen's domicile, and thus his citizenship, is in a state diverse from that of adverse parties. *See Action S.A. v. Marc Rich & Co.,* 951 F.2d 504 (2nd Cir.) *cert. denied,* 503 U.S. 1006, 112 S.Ct. 1763, 118 L.Ed.2d 425 (1992); *Mutuelles Unies v. Kroll & Linstrom,* 957 F.2d 707 (9th Cir.1992); *Sadat v. Mertes,* 615 F.2d 1176 (7th Cir.1980); *Las Vistas Villas, S.A. v. Petersen,* 778 F.Supp. 1202 (D.C.Fla.1991) (*affirmed by* 13 F.3d 409 (11th Cir.1994)); *Liakakos v. CIGNA Corp,* 704 F.Supp. 583 (E.D.Pa.1988); See also *Maple Island Farm, Inc. v. Bitterling,* 196 F.2d 55 (8th Cir.) *cert. denied,* 344 U.S. 832, 73 S.Ct. 40, 97 L.Ed. 648 (1952). Accordingly, the dual citizen should not be allowed to invoke alienage jurisdiction because this would give him an advantage not enjoyed by native-born American citizens. *Sadat v. Mertes,* 615

F.2d 1176 (7th Cir.1980); *Soghanalian v. Soghanalian,* 693 F.Supp. 1091 (D.C.Fla.1988); *Liakakos v. CIGNA Corp., supra.* The latter conclusion is sound according to 1 Moore's Federal Practice § 0.74[4], because the major purpose of alienage jurisdiction is to promote international relations by assuring other countries that litigation involving their nationals will be treated at the national level, and alienage jurisdiction is also intended to allow foreign subjects to avoid real or perceived bias in the state courts—a justification that should not be available to the dual citizen who is an American. *See also* 13B Wright-Miller-Cooper § 3621 (1984).

A change in domicile typically requires only the concurrence of: (1) physical presence at the new location and (2) an intention to remain there indefinitely; 13B Wright-Miller-Cooper, Federal Practice and Procedure § 3613 (1984), citing, *inter alia, Stine v. Moore,* 213 F.2d 446 (5th Cir.1954); *Paudler v. Paudler,* 185 F.2d 901 (5th Cir.) *cert. denied,* 341 U.S. 920, 71 S.Ct. 742 (1950); or, as some courts articulate it, the absence of any intention to go elsewhere. 13B Wright-Miller-Cooper § 3613 n. 3. Thus, a person who has the clear intent to change domicile does not accomplish the change until he is physically present in the new location with that intent. On the other hand, mere presence in a new location does not effect a change of domicile; it must be accompanied with the requisite intent. In most cases, the difficult issue is not presence but whether the intent to change domicile can be shown. 1 J. Moore, Moore's Federal Practice § 0.74[3.-1] (1996).

A person's domicile persists until a new one is acquired or it is clearly abandoned. *Lew v. Moss,* 797 F.2d 747 (9th Cir.1986); *Mas v. Perry,* 489 F.2d 1396 (5th Cir.) *cert. denied,* 419 U.S. 842, 95 S.Ct. 74, 42 L.Ed.2d 70 (1974). There is a presumption in favor of the continuing domicile which requires the party seeking to show a change in domicile to come forward with enough evidence to that effect to withstand a directed verdict. *Lew v. Moss,* 797 F.2d at 751. While some opinions seem to imply that the burden of persuasion rests with the party attempting to show a change of domicile, this is an overstatement. The proper rule is that the party attempting to show a change assumes the burden of going forward on that issue. The ultimate burden on the issue of jurisdiction rests with the plaintiff or the party invoking federal jurisdiction. 1 J. Moore, Moore's Federal Practice § 0.74[3.-3], n. 8, (1996) citing *Lew v. Moss,* 797 F.2d 747, 751 (9th Cir.1986); *Slaughter v. Toye Bros. Yellow Cab Co.,* 359 F.2d 954, 956 (5th Cir.1966); *Gregg v. Louisiana Power & Light Co.,* 626 F.2d 1315 (5th Cir.1980).

In determining a litigant's domicile, the court must address a variety of factors. No single factor is determinative. The court should look to all evidence shedding light on the litigant's intention to establish domicile. The factors may include the places where the litigant exercises civil and political rights, pays taxes, owns real and personal property, has driver's and other licenses, maintains bank accounts, belongs to clubs and churches, has places of business or employment, and maintains a home for his family. *See Lew v. Moss,* 797 F.2d 747 (9th Cir.1986); *Hendry v.*

*Masonite Corp.,* 455 F.2d 955 (5th Cir.) *cert. denied,* 409 U.S. 1023, 93 S.Ct. 464, 34 L.Ed.2d 315 (1972); 1 J. Moore, Moore's Federal Practice § 0.74[3.-3] n. 18 (1996) (citing authorities). A litigant's statement of intent is relevant to the determination of domicile, but it is entitled to little weight if it conflicts with the objective facts. *Freeman v. Northwest Acceptance Corp.,* 754 F.2d 553, 556 (5th Cir.1985); *Hendry v. Masonite Corp.,* 455 F.2d 955, 956 (5th Cir.) *cert. denied,* 409 U.S. 1023, 93 S.Ct. 464, 34 L.Ed.2d 315 (1972).

Most courts regard domicile as presenting a mixed question of law and fact. *E.g., Village Fair Shopping Center Co. v. Sam Broadhead Trust,* 588 F.2d 431, 433 (5th Cir.1979). Nevertheless, in practice, the district court's determination of domicile is reviewed on appeal as a question of fact; it will be upheld unless "clearly erroneous." 1 J. Moore, Moore's Federal Practice § 0.74[3.-3] n. 29 and authorities cited therein.

Applying these precepts to the case at bar, we conclude that there was no clear error in the district court's determination that Prot was domiciled in Texas when the action was initially filed and when he removed it to federal court. Accordingly, the district court's conclusion that diversity and subject matter jurisdiction exist in this case was also correct.

Because Prot twice recanted his statement as to whether he intended to establish domicile in France the trial court was entitled to regard his representations as lacking in candor and credibility. Originally, in Prot's notice of removal filed on June 29, 1992, he represented to the court that he was "a dual-citizen

both of France and the United States however, significantly prior to the time that suit was filed against him he became domiciled in France."  Later, after Coury obtained judgment against Prot and moved to have Prot's Texas parcels of real estate turned over, Prot filed an affidavit in connection with the court's hearing on the turnover motion on August 8, 1994.  In the affidavit, Prot recanted his pleading that he was domiciled in France, averring that he never intended to live permanently in France or to abandon his Texas home;  that his intention was always to return to his homestead in Texas.  His affidavit further provided that in late 1990 a bottled water business opportunity in France caused him to begin commuting between Texas and France;  his wife resided full time in their Bellaire, Texas[1] home as late as April 1991;  in June 1991 he and his wife moved temporarily to France due to increased demands of his business;  neither he nor his wife ever established a permanent residence in France;  his wife returned to Texas for over a year from the summer of 1992 until September 1993;  in the meantime he had been leasing the Bellaire house for no longer than eighteen-month terms;  he and his wife intended to return to Bellaire some day so she could resume work at the Texas Medical Center;  he would not be willing to sell the Bellaire property;  he filed a voluntary designation of homestead on the Bellaire property in March 1994;  he did not know when he would be able to return to the United States—stating the bottled water business had already taken a year and a half longer than he planned;  because the

---

[1]Bellaire, Texas is a small municipal corporation located in the center of Houston, Texas.

quarters in which he resided near the natural springs were about forty miles by mountain roads to the school his children attended, his wife and children reside in Limoges, France, while he lives on the property where the business is located—an arrangement he assured the court was totally unsatisfactory as a permanent home.

Finally, in his first appeal to this court in 1994, Prot asserted that the district court may have lacked subject matter jurisdiction, viz., no diversity jurisdiction. On remand from this court, at the evidentiary hearing held by the district court to determine whether jurisdiction exists, Prot recanted the testimony in his sworn affidavits at the hearing on the turnover motion. In support of the proposition that he was not domiciled in Texas in May and June of 1992, at the time the suit was filed and removed, Prot testified that it was "primarily" his wife's wish to return to the United States, thereby implying he had no such desire; that their return to Texas was contingent on the success of the bottling water business; that he had characterized their move to France as "temporary" in earlier statements only because his wife did not wish to live in France permanently; and his intention to return to Texas was nothing more that an indefinite plan for the future. On cross examination Coury's attorney asked Prot about the "dozen occasions" Prot testified that it was his "constant intent to return to Texas some day, throughout the time [Prot] left Texas until the present." In response, Prot indicated that he had testified so because that was what he had told his wife. The record does not indicate that Prot otherwise tried to reconcile the conflicting testimony.

Based on the evidence of record, much of which consisted of Prot's conflicting statements and actions, the district court found that Prot established a domicile in Texas in 1987, that he physically moved himself and his family to France in 1991 to avoid transatlantic commuting, but that the evidence failed to show an essential requisite of a change in domicile, viz., that he formed an intention in 1991 or 1992, prior to the filing of the complaint and the removal of this case, to remain in France indefinitely. In view of Prot's repeated statements that he and his wife did not intend to stay in France indefinitely and that they always intended to return to Texas, we conclude that the district court's findings were not clearly erroneous.

Furthermore, the trial court applied the correct principles of law to these facts in concluding that diversity jurisdiction exists. Because Prot's domicile was determined to be Texas at the time the suit was filed and removed, while Coury's domicile was in California, diversity of citizenship existed between the two parties pursuant to 28 U.S.C. § 1332(a)(1). The removal was improper, however, because a defendant may not remove a state action to federal court if a defendant is a citizen of the state in which the action is filed. 28 U.S.C. § 1441(b). Coury waived this defect, however, by his failure to seek a remand of the action to state court within 30 days of removal. 28 U.S.C. § 1447(c). Nevertheless, although removal may have been improper, subject matter jurisdiction is not lacking. *Grubbs v. General Electric Credit Corp.,* 405 U.S. 699, 702, 92 S.Ct. 1344, 1347, 31 L.Ed.2d 612 (1972) ("Longstanding decisions of this Court make clear,

however, that where after removal a case is tried on the merits without objection and the federal court enters judgment, the issue in subsequent proceedings on appeal is not whether the case was properly removed, but whether the federal district court would have had original jurisdiction of the case had it been filed in that court.").

## Homestead Exemption

The district court did not clearly err in determining that at the time the motion for turnover of Prot's Texas properties was filed in March 1994, Prot's Bellaire, Texas property was no longer protected from turnover and forced sale by the Texas homestead exemption. Prot began commuting to France from Texas in 1991 and by 1994, he and his family had lived in France continuously for over two years. He had purchased at least two properties and established a permanent and primary residence on one of them. It was plausible for the trial court to conclude that after the success of his business had been delayed one and one-half years beyond his original plans, and his wife and children rejoined him in France in September of 1993, and he established for them a home near the children's school in Limoges, France, the Prots had established a new homestead in France and had abandoned their homestead in Bellaire, Texas prior to the turnover proceedings in 1994.

The question of whether there has been an abandonment of a homestead is to be determined from all the pertinent facts and circumstances of each particular case as it arises. *Coleman v. Banks,* 349 S.W.2d 737, 739 (Tex.Civ.App.1961) (application for writ

of error refused, no reversible error); *Hix v. De Phillipi,* 216 S.W.2d 643, 645-646 (Tex.Civ.App.1948) (application for writ of error refused, no reversible error). A homestead exemption may be lost or abandoned by a removal from the premises under circumstances clearly indicating that the removal is not merely temporary. A homestead claimant is not required to remain on the premises at all times, and he does not necessarily lose, forfeit or abandon his homestead rights merely by removing or being absent from the premises when the absence is temporary. *McFarland v. Rousseau,* 667 S.W.2d 929 (Tex.Ct.App.1984). However such absence is a matter properly to be considered, in connection with other circumstances, in determining the question of abandonment. *Carver v. Gray,* 140 S.W.2d 227 (Tex.Civ.App.1940) (application for writ of error dismissed, judgment correct).

Generally, in order to constitute an abandonment of a homestead by a removal from the premises, the removal must be accompanied by the intent never to return to occupy the premises as a homestead. *See Coyel v. Mortgage Bond Co. of New York,* 124 S.W.2d 204 (Tex.Civ.App.1939). A removal from a property constituting a homestead does not cause an abandonment of the homestead where the owner has an unqualified, fixed, and abiding intention to return to the property and occupy it as a homestead, where such intentions remain at all times, and no other homestead is acquired. *City National Bank of Bryan v. Walker,* 111 S.W.2d 350 (Tex.Civ.App.1937) (application for writ of error dismissed for want of jurisdiction) (The court found Walker had not abandoned his homestead though it had been vacated when he moved to another

state, because Walker had not purchased another homestead, had left all furnishings in the house, and had retained his lodge, church and other affiliations in Bryan).  Nevertheless, the element of lapse of time the owner has remained away is a matter to be considered, and if the absence is prolonged, it may, if there is no evidence of a fixed intention to return, constitute an abandonment. *Nelson v. Nelson,* 134 B.R. 838, 845-846 n. 3 (N.D.Tex.1991) ("If a homestead claimant has remained away from home a prolonged period of time, an intention of no interest to return may be inferred."); *see also Tuerpe v. George Saunders Live Stock Commission Co.,* 245 S.W. 741, 742 (Tex.Civ.App.1922) (writ of error dismissed or refused) ("while in this case the Tuerpes were vigorous in their denial of any intention to abandon the ranch homestead, we cannot say ... that this evidence was not overcome by their admissions and conduct over a period of several years and we perceive no reason why we should set aside the ... findings of the trial judge against [the Tuerpes]").

Although a homesteader who has removed from the premises with no intention to return may change his intention to resume possession and thereby reinvest the property with the homestead character, such resumption of possession has only the effect of creating a new homestead right from the time of the new occupancy, or immediately prior to occupancy as long as the claimant has a fixed time in the near future that he will occupy the homestead. However, the resurrection of the homestead right in the property does not affect the rights of third persons acquired in the interim between the loss of the old and the acquisition of the new.  *See*

*Zimmer v. Pauley,* 51 Wis. 282, 8 N.W. 219, 221 (1881) (where overt acts by plaintiff supported redemption of possibly abandoned homestead just prior to the date of judgment against plaintiff, and thus the plaintiff's property was protected from the judgment); *Kaes v. Gross,* 92 Mo. 647, 3 S.W. 840, 842 (1887) ("If [a homestead exemption] be once lost, and possession of the homestead be again resumed, such resumption of possession will only have the effect of giving origin to a new homestead right, bearing date from the new occupancy, and having no retroactive validity on the old right lost by abandonment, and possessing no force against the rights of third persons acquired in the interim between the loss of the old and the acquisition of the new right.").

Since no one can own two homesteads at the same time, if the debtor acquires a new homestead, he thereby abandons and loses his homestead rights in the former place of residence. *Norman v. First Bank & Trust,* Bryan, 557 S.W.2d 797, 801 (Tex.Civ.App.) (application for writ of error refused, no reversible error, 1978). The best evidence of the abandonment of a former homestead is the fact that a new and permanent home has been acquired, and appropriated as such. *Panhandle Const. Co. v. Wiseman,* 110 S.W.2d 615, 617 (Tex.Civ.App.1937) (application for writ of error dismissed for want of jurisdiction) ("[t]here is no rule of law better established in Texas than that possession and use of real estate by one who owns it, and who, with his family, resides upon it, makes it the homestead of the family in law and in fact, and it has been repeatedly held by the courts of this state that the best evidence of the abandonment of a former homestead is the fact that

a new and permanent home has been acquired and appropriated as such."). The removal of the owners from one property to another, and the occupancy and use of the latter property as a homestead, unaccompanied by any act evidencing an intention to return to the former home, silently, but effectively, proclaims the latter property to be their homestead and constitutes the highest and most conclusive evidence of abandonment of the former property as a homestead. *Norman v. First National Bank and Trust, Bryan,* 557 S.W.2d 797, 800-802 (Tex.Civ.App.) (application for writ of error refused, no reversible error, 1978) citing, *inter alia, Hinton v. Uvalde Paving Co.,* 77 S.W.2d 733 (Tex.Civ.App.1934) (application for writ of error refused).

Whether land claimed for homestead exemption was used principally for residential purposes or otherwise is a question of fact for the determination of the jury. *Continental Inv. Co. v. Schmeich,* 145 S.W.2d 219, 221 (Tex.Civ.App.1940) (application for writ of error refused). However, whether a subject property has been impressed with the character of homestead is based on findings of fact and conclusions of law. *Caulley v. Caulley,* 806 S.W.2d 795 (Tex.1991). Abandonment of a homestead is a question of fact to be determined in each case from the entire evidence before the court. *Coleman v. Banks,* 349 S.W.2d 737, 741 (Tex.Civ.App.1961) (application for writ of error refused, no reversible error). Proof that a new homestead has been acquired establishes abandonment of the old homestead as a matter of law. *Norman v. First Bank & Trust, Bryan,* 557 S.W.2d 797, 800 (Tex.Civ.App.) (application for writ of error refused, no reversible error, 1978).

This Court accepts a district court's finding of fact unless they are clearly erroneous—"due regard shall be given to the opportunity of the trial court to judge of the credibility of the witnesses", Fed.R.Civ.P. 52(a)—and this court reviews issues of law de novo. *State Savings and Loan Assn. v. Liberty Trust,* 863 F.2d 423 (5th Cir.1989). The burden of showing that the findings of the district court are clearly erroneous is heavier if the credibility of witnesses is a factor in the trial court's decision. *Village Fair Shopping Center v. Broadhead,* 588 F.2d 431, 434 n. 2 (5th Cir.1979).

Applying these precepts to the case at bar, we conclude that the district court did not err in determining that by 1994 Prot had established a new homestead in France, no longer having the requisite intent to maintain the Bellaire, Texas property as his homestead, and in concluding that the Bellaire Boulevard property was not protected at that time from turnover and forced sale by the Texas homestead exemption.

The evidence before the court consisted of two depositions of Prot, taken in 1992 and 1994, and an affidavit submitted by Prot in lieu of an appearance at the evidentiary hearing on jurisdiction on remand. When Prot initially moved to France in 1991 to manage his bottle water company, though he also moved his wife and children and their residential belongings, he anticipated having the business up and running in eighteen months. His wife moved back to San Antonio, Texas in the summer of 1992 and worked there until the fall of 1993. At that point Prot admits that his business was not developing as successfully as possible and his wife and children

moved back to France to join him in September 1993. Prot's intention to return to Texas within eighteen months was no longer realistic. He remodeled an apartment on the property where the spring water was located and Prot's family settled into a home 40 miles away in Limoges near the children's school. When the motion for turnover was filed in 1994, Prot and his family had not lived at the Bellaire Boulevard property for three years; Prot discontinued his Texas mailing address in 1993; he had lost his homestead property tax treatment on the Bellaire, Texas property; he evidently did not file a homestead declaration for the Bellaire property until after Coury moved for its turnover; he was unsure of whether he still maintained an active checking account in Texas, indicating little if any use of the account if it existed; he had stated in a 1992 deposition that he did not have any intention of making his primary residence in the United States at any time in the future, though later he stated that English was not his primary language and that he may not have understood the question; and Prot continuously leased out the Bellaire property after his initial move to France in 1991. In addition, Prot declared to the French Consulate that he lived in France "full-time"; he maintained active checking and savings accounts in French financial institutions; in additionto operating the bottling business, Prot is a "French farmer" in the timber and hay businesses; and he admitted at the evidentiary hearing in 1994 to determine where he was domiciled that he "purchased land in France and move[d] his family into a home that was prepared for the use as a home".

We find no clear error in the district court's determination

that prior to 1994 Prot created a new homestead in France and abandoned his Texas homestead, subsequent to which the Texas property was not protected by the homestead exemption.

## Other Issues

For the reasons assigned by the trial court, we affirm the trial court's determination that Prot waived by not pleading the affirmative defense of illegality of the contract and find no abuse of discretion in the court's denial of Prot's post-verdict motion for leave to amend his answer to plead the affirmative defense of illegality of contract. Fed.R.Civ.P. 8(c). Also, it appears that Coury may be entitled to an award of prejudgment interest. *Cavnar v. Quality Control Parking,* 696 S.W.2d 549 (Tex.1985); *see also Concorde Limousines, Inc. v. Moloney Coachbuilders, Inc.,* 835 F.2d 541, 548-550 (5th Cir.1987) (for discussion of the development of Texas law concerning prejudgment interest). The district court failed to rule on this claim. Accordingly, this case will be remanded to the trial court for adjudication of this issue.

The judgment of the trial court is Affirmed, in part, but the case is remanded in part to that court for its determination of Coury's prejudgment interest claim.