Darren WEBB, Individually and on behalf of Britton Gary Webb, a minor, and Justin Wayne Johnston, a minor, Heirs at Law of Julie Ann Webb, Deceased, Plaintiffs,

v.

Kirk BANQUER, M.D., Surgery Clinic of Hattiesburg, P.A., a Mississippi corporation, Methodist Hospital of Hattiesburg, Inc., a Mississippi corporation, S. Leach, R.N., K. West, R.N., and John Doe(s) 1 Through 10, Defendants.

Civil Action No. 2:97CV196PG.

United States District Court, S.D. Mississippi, Hattiesburg Division.

Sept. 2, 1998.

Vicki R. Leggett, Patrick H. Zachary, Zachary & Leggett, Hattiesburg, MS, for Plaintiffs.

J. Robert Ramsay, S. Robert Hammond, Jr., Bryant, Clark, Dukes, Blakeslee, Ramsay & Hammond, Hattiesburg, MS, for Defendants.

## ORDER

PICKERING, District Judge.

This matter is before the Court on Defendants' Motion to Dismiss, on in the alternative, for Summary Judgment for Lack of Subject Matter Jurisdiction. The Court, having reviewed the motion, the briefs, the authorities cited, and being otherwise fully advised in the premises, finds as follows, to-wit:

### FACTUAL BACKGROUND

Darren Webb and his wife, Julie Webb, were domicilaries of the State of Texas. In July 1996, Mr. Webb accepted a job with G & K Services in Hattiesburg, Mississippi. After that, Mr. Webb packed some of the couple's personal property and drove to Mississippi, staying several weeks at a friend's home. About the middle of August, his wife and children came to join Mr. Webb in Mississippi. Several weeks after Mr. Webb's wife arrived in Mississippi, she secured a job as a bookkeeper at Medical Assistance, Inc. After a short time working for Medical Assistance, Inc., she took a job with Bean Moving & Storage as a bookkeeper. Mr. Webb continued to work for G & K Services as a team leader. During their stay in Mississippi, the couple, through mostly rent-to-own arrangements, rented furniture and appliances to furnish their rental house. They never purchased any real property in Mississippi. According to Mr. Webb, it was always his intention as well as the intention of his wife that they should return to the State of Texas. Mr. Webb testified that they anticipated being in Mississippi no more than one to two years.

After living in Mississippi for approximately nine months, Mr. Webb's wife died while a laparotomy was being performed following complications during a gall bladder removal surgery. Upon the death of his wife, Plaintiff Darren Webb and their two children went back to Texas for the funeral. Mrs. Webb was buried in Texas. Mr. Webb and his children never again resided in Mississippi, although he did return to Mississippi for approximately one week to move their belongings.

Defendants have moved the Court to dismiss Plaintiffs' wrongful death action because Defendants contend that the Court lacks subject matter jurisdiction due to lack of diversity. In the alternative, Defendants have moved for summary judgment. Defendants argue that complete diversity does not exist between the parties, since both the plaintiffs and the defendants in the case *sub judice* were domiciled in the State of Mississippi at the time of the alleged malpractice. On the other hand, Plaintiffs contend that the Webbs did not intend a change in their domiciliary status by physically moving from Texas to Mississippi. In support of their contention, Plaintiffs have offered evidence negating the defendants' assertions that the Webbs intended to make the State of Mississippi their new domicile, thus abandoning their earlier domicile of Texas.

### STANDARD OF REVIEW

The parties agree that materials outside the pleadings must be considered. Therefore, the instant motion must be resolved as a Motion for Summary Judgment rather than as a Motion to Dismiss.

The Federal Rules of Civil Procedure, Rule 56(c) authorizes summary judgment where "the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, show that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corporation v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). "The mere existence of a disputed factual issue ... does not foreclose summary judgment. The dispute must be genuine, and the facts must be material." *Professional Managers, Inc. v. Fawer, Brian, Hardy & Zatzkis*, 799 F.2d 218, 222 (5th Cir.1986). "With regard to 'materiality', only those disputes over facts that might affect the outcome of the lawsuit under the governing substantive law will preclude summary judgment." *Phillips Oil Company v. OKC Corporation*, 812 F.2d 265, 272 (5th Cir.1987).

To defend against a proper summary judgment motion, one may not rely on mere denial of material facts nor on unsworn allegations in the pleadings or arguments and assertions in briefs or legal memoranda. Once a properly supported motion for summary judgment is presented, the nonmoving party must rebut with "significant probative" evidence. *Ferguson v. National Broadcasting Co., Inc.*, 584 F.2d 111, 114 (5th Cir. 1978). Stated another way, the nonmoving party's response, by affidavit or otherwise, must set forth specific facts showing that there is a genuine issue for trial. *See, e.g.,* Fed.R.Civ.P. 56(e); *Union Planters Nat. Leasing v. Woods*, 687 F.2d 117, 119 (5th Cir.1982).

### LEGAL ANALYSIS

The federal diversity statute, 28 U.S.C. section 1332(a)(1), expressly provides that "[t]he district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,-000, exclusive of interest and costs, and is between ... citizens of different states; ..." 28 U.S.C. § 1332. When this suit was filed by Darren Webb for and on behalf of himself and his two minor children, the plaintiffs were, without question, residents of and domiciled in the State of Texas. The defendants at all times relative to this case have been domiciled in the State of Mississippi. At the time suit was filed, clearly there was complete diversity between the parties.

28 U.S.C. section 1332(c)(2) states, in pertinent part, "[t]he legal representative of the estate of a decedent shall be deemed to be a citizen only of the same state as the decedent, ..." Citing section 1332(c)(2), Defendants contend that Plaintiffs' domicile in the instant case should be the domicile of the decedent at the time of her death. Defendants maintain that section 1332(c)(2)'s applicability destroys the Court's diversity jurisdiction; however, this case involves a wrongful death action, and other courts' interpretations of section 1332(c)(2)'s applicability to wrongful death actions have been less than uniform.

Three federal district courts have determined that section 1332(c)(2) applies to a wrongful death action and, as a result, that the representative bringing suit is deemed to be a citizen of the same state as the dece-

dent. *See, James v. Three Notch Med. Ctr.*, 966 F.Supp. 1112 (M.D.Ala.1997); *Green v. Lake of Woods County*, 815 F.Supp. 305 (D.Minn.1993); *Liu v. Westchester County Med. Ctr.*, 837 F.Supp. 82 (S.D.N.Y.1993). Three other federal district courts have found just the opposite and have held that section 1332(c)(2) does not apply to wrongful death actions. Those courts have generally found that a person bringing a wrongful death suit is not a "legal representative of the estate of a decedent" under section 1332(c)(2) because the plaintiff is bringing suit on his or her own behalf and not on behalf of the estate. *See, Winn v. Panola–Harrison Elec. Coop., Inc.*, 966 F.Supp. 481 (E.D.Tex.1997); *Tank v. Chronister*, 998 F.Supp. 1160 (D.Kan.1997) (reversing its earlier decision holding to the contrary); *Marler v. Hiebert*, 960 F.Supp. 253 (D.Kan.1997).

The Mississippi Wrongful Death Statute, Miss.Code Ann. § 11–7–13 (Supp.1997), provides, in pertinent part:

> [A wrongful death action] for … damages may be brought in the name of the personal representative of the deceased person for the benefit of all persons entitled under the law to recover, or by widow for the death of her husband, or by the husband for the death of the wife, or by the parent for the death of a child, or in the name of a child, or in the name of a child for the death of a parent, … or all parties interested may join in the suit, …

Miss.Code Ann. § 11–7–13.

The Mississippi Wrongful Death Statute also provides that, regardless of whether an estate has been opened, the beneficiaries may collect for the funeral expenses, medical expenses and property damages of the decedent. *Id.* Moreover, the statute provides that any sums collected for property damages, funeral, medical or other related expenses shall be subject to the payment of debts or liabilities of the deceased, but that all other damages shall "not be subject to the payment of the debts or liabilities of the deceased." *Id.*

■ Although neither party briefed the issue of whether section 1332(c)(2) applies to wrongful death beneficiaries as contrasted to a court appointed administrator or executor and this Court has found no Fifth Circuit cases dispositive of this precise question, this Court concludes, after examining the precise language of both section 1332(c)(2) and the Mississippi Wrongful Death Statute, that section 1332(c)(2) does not apply to this action. Under the precise language of these two statutes and in view of the fact that the district courts have original jurisdiction in all civil actions between citizens of different states, this Court is of the opinion that diversity of citizenship in this particular case should be determined based upon the domicile of the parties at the time suit is filed and not based upon the domicile of decedent at the time of her death.

This Court is of the opinion that the "personal representative" referred to in the Mississippi Wrongful Death Statute, Miss.Code Ann. § 11–7–13, is synonymous with "the legal representative of the estate" referenced in § 1332(c)(2). However, the court is also of the opinion that the reference in the Mississippi Wrongful Death Statute to specific beneficiaries (i.e., husband and/or children) is not synonymous with the "legal representative of the estate." These specific beneficiaries are not court appointed, and in the opinion of this Court, are not "the legal representative of the estate" contemplated in § 1332(c)(2). In sum, since the specific beneficiaries derive their right to bring the wrongful death action from their relationship to the decedent rather than from court appointment, their case is not covered by section 1332(c)(2).[1] In fact,

---

1. The Court's conclusion in the case *sub judice* is in conformity with an earlier decision rendered by a United States District Court in Kansas. *See Marler v. Hiebert*, 960 F.Supp. 253 (D.Kan.1997). In *Marler*, the Kansas court cited an American Law Institute Study which explained the proposed amendment, ultimately adopted, to Section 1332(c)(2). *Marler*, 960 F.Supp. at 254. According to the American Law Institute Study:

> The phrasing "any person representing the estate of a decedent…." does not include a person given by statute a right to bring an action in his own name because of a decedent's death by reason of his relationship to the decedent (e.g., a widow or child of the decedent); such a person retains such right of access to a federal court as his own citizenship gives him. The imposition upon diversity jur-

one of the major reasons for the adoption of section 1332(c)(2) was to prevent parties from manipulating jurisdiction by obtaining court appointment of an executor or administrator in a different state to create diversity. That situation is not present in the case at bar.

▮ Even if the Court were to reach a different conclusion and find that Plaintiffs' domicile in the instant case should be the domicile of the decedent at the time of her death, the result is the same. It is elementary hornbook law that a party's domicile perseveres until a new one is acquired or the previous one is clearly abandoned. In order for a new domicile to be acquired, the party seeking to prove a change in domicile must come forward with evidence demonstrating the concurrence of: (1) physical presence at the new location, and (2) an intention to remain there indefinitely. *See, e.g., Coury v. Prot,* 85 F.3d 244 (5th Cir.1996). Although the party attempting to show a change in domicile has the burden of going forward on that issue, the ultimate burden on the issue of subject matter jurisdiction, of course, rests with the party invoking the Court's jurisdiction. *See Coury,* 85 F.3d at 250.

In *Coury v. Prot,* the defendant ("Prot") and his wife moved to France and lived for one year. *Id.* at 251. After his wife returned to the United States, Prot remained in France. *See id.* While Prot was in France, he did not know at what time he would be able to return to the United States. *See id.* Nevertheless, the Fifth Circuit affirmed the district court's determination that the domicile of Prot remained in the State of Texas. *See id.* In so doing, the Court noted that:

[a] person who has the clear intent to change domicile does not accomplish the change until he is physically present in the new location with that intent. *On the other hand, mere presence in a new location does not affect a change of domicile; it must be accompanied with the requisite intent.* In most cases, the difficult issue is

not presence but whether the intent to change domicile can be shown.... A person's domicile persists until a new one is acquired or it is clearly abandoned.

*Id.* at 250 (emphasis added).

In another case, *Combee v. Shell Oil Company,* 615 F.2d 698 (5th Cir.1980), the Fifth Circuit was presented with a situation in which the plaintiff ("Mr. Combee"), a domiciliary of Florida, was injured while working as a laborer on an offshore facility in Louisiana. *Combee,* 615 F.2d at 698. After Mr. Combee joined two Louisiana Corporations as defendants, the defendants maintained that the Court lacked diversity jurisdiction because Mr. Combee was, like the corporate defendants, a Louisiana domiciliary. *See id.* at 699–700. Mr. Combee had been working and going to school in Louisiana for more than a year. He had also expressed his stated intention of staying in Louisiana "for the next few years." *Id.* at 700. Moreover, in an earlier deposition, Mr. Combee had testified that he intended to stay in Louisiana permanently. *See id.* Nevertheless, despite the defendants' contention that these facts demonstrated Mr. Combee's change of domicile, the district court accepted Combee's stated intention that his home was in Florida and concluded that Combee was a domiciliary of Florida, thus denying the defendants' motion to dismiss for lack of diversity. *See id.* The Fifth Circuit affirmed the district court's decision. *See id.* In the opinion of this Court, the holdings in *Coury* and *Combee* are dispositive of the instant case.

Defendants rely heavily upon the fact that Darren Webb obtained a Mississippi driver's license and that both he and the decedent paid taxes in Mississippi. However, Defendants ignore that Plaintiff was required to obtain a Mississippi driver's license in order to drive the company truck, which was a part of his job responsibility. Defendants likewise ignore the fact that the parties had no choice as to whether or not they paid Mississippi taxes. The payment of taxes is not a

isdiction has been the appointment of out-of-staters to create diversity, and there seems no sufficient reason to cover a person whose right to sue is because of his relationship rather than by appointment.

*Id.* at 254 (citing American Law Institute, Study of the Division of Jurisdiction Between State & Federal Courts 118 (1968)).

matter left to the whim of the taxpayer; Mississippi law is not so permissive. Consequently, the fact that Mr. Webb obtained a Mississippi driver's license and that the Webbs paid Mississippi taxes does not contradict Plaintiffs' stated intention.

■ After a thorough review of the record, there is no substantial objective evidence to contradict the plaintiffs' stated intent of being a domiciliary of the State of Texas. The Court has considered Darren Webb's uncontradicted statements that he and his wife never intended to be permanent residents of Mississippi. Mr. Webb's statements indicated that the Webbs were only in Mississippi temporarily and were not to remain for more than two years. The Court finds these statements to be truthful in light of the temporary nature of Mr. Webb's job and in view of the fact that, within the month before the death of his wife, Mr. Webb had contacted his superiors to inquire about transferring back to the State of Texas. As a matter of fact, the record demonstrates that he and his wife talked about transferring back to Texas the night before her death.

Other factors which the Court has considered to be persuasive are the fact that Plaintiffs' decedent did not obtain a Mississippi driver's licence—her Texas driver's license would have still been valid for some six or seven months after her death, which is almost as long as she had been in Mississippi at the time of her death. Further, the decedent maintained her church membership in Texas and carried her children back to her Texas church to be baptized. The decedent's funeral services were also held in Texas, and Decedent was buried in Texas. Most of the personal property ("belongings") of the Webb family were stored in Texas, and the Webbs brought very few personal belongings with them from Texas to Mississippi. Additionally, Decedent never registered to vote in the State of Mississippi.

In sum, the Court is of the opinion that the evidence confirms Darren Webb's statement that neither he nor his wife ever formed the necessary intent to establish a legal domicile in Mississippi. *See also, Mas v. Perry*, 489 F.2d 1396, 1399 (5th Cir.1974) (finding that the parties did not effect a change of domicile since they lacked the requisite intent); *Stine v. Moore*, 213 F.2d 446, 448 (5th Cir.1954) (stating that the "true test" of establishing a new domicile is whether a party moves to another state with the bona fide intention of remaining there permanently). Taking the record as a whole, the Court concludes that the plaintiffs' established domicile is unchanged from the State of Texas. The record before the Court failed to demonstrate an essential requisite of a change in domicile: the intention of the plaintiffs to remain in Mississippi indefinitely. Upon that basis, the Court finds that Plaintiffs were not domiciled in the State of Mississippi at the time this suit was filed or at the time of the alleged malpractice. It is, therefore, ordered that Defendants' motion to dismiss Plaintiffs' complaint for failure of diversity of parties, or in the alternative for summary judgment be, and the same is, hereby denied.

For the reasons stated above, Defendants' Motion to Dismiss, or in the alternative, for Summary Judgment against Plaintiffs should be and is hereby DENIED.