James BROWN, Plaintiff,

v.

**MUTUAL OF NEW YORK LIFE INSURANCE COMPANY, Herman Jacobi and Jana Thornton, Defendants.**

No. CIV.A. 4:01CV177LN.

United States District Court,
S.D. Mississippi,
Eastern Division.

May 6, 2002.

is not persuaded that this bears on the propriety of removal.

Winston James Thompson, II, The Colom Law Firm, Columbus, MS, for Plaintiff.

W. Wayne Drinkwater, Jr., J. William Manuel, Jeffrey R. Blackwood, Bradley, Arant, Rose & White, LLP, Jackson, MS, Judson Herben Turner, Andrew B. Johnson, Bradley, Arant, Rose & White, LLP, Birmingham, AL, W. Howard Gunn, Aberdeen, MS, for Defendants.

## MEMORANDUM OPINION AND ORDER

TOM S. LEE, Chief Judge.

This cause is before the court on plaintiff James Brown's motion to remand. As recounted in this court's order of April 5, 2002, defendant Mutual of New York Life Insurance Company (MONY) originally removed this action from state court based on the alleged existence of federal question jurisdiction, which was premised on MONY's contention that the insurance plan at issue in Brown's complaint was governed by the Employee Retirement Income Security Act, 29 U.S.C. § 1001 *et seq.* While MONY subsequently withdrew that asserted basis for jurisdiction, MONY received information while the case was pending in this court that one of the named defendants, Jana Thornton, was not a Mississippi resident as alleged in plaintiff's complaint, but rather was a Tennessee resident, which prompted an amendment of MONY's notice of removal to allege diversity of citizenship under 28 U.S.C. § 1332 as an additional basis for removal. In support of that contention, MONY took the position that defendant Herman Jacobi, though a Mississippi resident like plaintiff, had been fraudulently joined, so that if Thornton was in fact a Tennessee resident, there would be complete diversity of citizenship. The court thus granted MONY the opportunity to depose Thornton for the purpose of ascertaining the facts relative to her citizenship. The parties have since deposed Thornton, and have now made supplemental submissions to the court on the motion to remand. Having now considered those submissions, the court concludes that at the time this suit was commenced and removed, Thornton was a Mississippi resident, and that plaintiff's motion is therefore well taken.

Federal district courts have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000 and is between citizens of different states. 28 U.S.C. § 1332(a)(1). This case raises the question,

What makes a person a citizen of a state? The fourteenth amendment to the Constitution provides that: "All persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the State wherein they reside."

United States Const. amend. XIV, § 1. However, "reside" has been interpreted to mean more than to be temporarily living in the state; it means to be "domiciled" there. Thus, to be a citizen of a state within the meaning of the diversity provision, a natural person must be both (1) a citizen of the United States, and (2) a domiciliary of that state.

*Coury v. Prot,* 85 F.3d 244, 248 (5th Cir. 1996) (citations omitted). *See also Mas v. Perry,* 489 F.2d 1396, 1399 (5th Cir.), *cert. denied,* 419 U.S. 842, 95 S.Ct. 74, 42 L.Ed.2d 70 (1974) ("For diversity purposes, citizenship means domicile; mere residence in the State is not sufficient."). But what makes a person a domiciliary of a given state?

■ "A person's domicile is the place of 'his true, fixed, and permanent home and principal establishment, and to which he has the intention of returning whenever he is absent therefrom ....' " *Mas,* 489 F.2d at 1399 (quoting *Stine v. Moore,* 213 F.2d 446, 448 (5th Cir.1954)). "Domicile is, however, more than where the party resides—it is the place a person calls home. Thus, when determining a party's domicile, a court looks to such factors as where the person resides, where he works, goes to school, pays his taxes, is registered to vote, the place of his drivers license, and location of family," among others. *Quebe v. Ford Motor Co.,* 908 F.Supp. 446, 449 (W.D.Tex.1995) (citing *Lundquist v. Precision Valley Aviation, Inc.,* 946 F.2d 8, 10 (1st Cir.1991)). The court thus undertakes its consideration of the present motion with this understanding of the concept of "citizenship," together with a recognition of the following principles:

■ First, although a person may have several residences, he "has only one domicile at a particular time." *Armstrong v. Central Louisiana Elec. Co., Inc.,* Civ. A. No. 90–645, 1990 WL 223007, at *2 (E.D.La.1990); *see also Hardin v. McAvoy,* 216 F.2d 399, 403 (5th Cir.1955) ("[I]t must be kept in mind that a person may not have two domiciles, two citizenships, at the same time.").

■ Second, "[t]he burden of pleading the diverse citizenship is upon the party invoking federal jurisdiction, and if the diversity jurisdiction is properly challenged, that party also bears the burden of proof." *Mas,* 489 F.2d at 1399. *See also Coury,* 85 F.3d at 251 ("The ultimate burden on the issue of jurisdiction rests with the plaintiff or the party invoking federal jurisdiction.").

■ Third, once a person has established a domicile, that domicile "persists until a new one is acquired or it is clearly abandoned." *Coury,* 85 F.3d at 250. That is to say, "[t]here is a presumption in favor of the continuing domicile which requires the party seeking to show a change in domicile to come forward with enough evidence to that effect to withstand a directed verdict." *Id.*

■ And finally, "[a] change of domicile may be effected only by a combination of two elements: (a) taking up residence in a different domicile with (b) the intention to remain there." *Mas,* 489 F.2d at 1399 (citing *Mitchell v. United States,* 88 U.S. (21 Wall.) 350, 22 L.Ed. 584 (1875); *Sun Printing & Publishing Association v. Edwards,* 194 U.S. 377, 24 S.Ct. 696, 48 L.Ed. 1027 (1904)).

■ The record in this case—and specifically, Thornton's deposition testimony—reveals the following facts.[1] Since her graduation from college in 1970, Thornton

---

1. "In making a jurisdictional assessment, a federal court is not limited to the pleadings; it may look to any record evidence, and may receive affidavits, deposition testimony or live testimony concerning the facts underlying the citizenship of the parties." *Coury v. Prot,* 85 F.3d 244, 249 (5th Cir.1996).

has lived off and on either in Tennessee or Mississippi, and at times, including at times relevant to the present inquiry, both. During the 1970s, she worked in Water Valley, Mississippi as a statistician and quality analyst for Colt Industries. Then, in the early 1980s, she began working for her aunt who owned a personal care home in Memphis. At that time, Thornton did not move to Memphis, but rather worked in Memphis and stayed there with her aunt during the week, and returned to Water Valley on the weekends. At some point, she began working for Universal Life Company selling insurance, and was so engaged for a year-and-a-half before going to work for MetLife Insurance Company; at first she worked for MetLife in its Memphis, Tennessee office, and lived in Memphis, but she later went to work in MetLife's Columbus, Mississippi office, at which time she lived in Grenada, Mississippi, in a home she apparently had purchased. In the late 1980s, Thornton left her job at MetLife to care for her grandfather, who lived in Bruce, Mississippi, and remained with him in Bruce until his death.

In 1992, following her grandfather's death, Thornton went to work for New York Life. During that job, which she held until some time in 1994, Thornton lived in and had an office in Grenada, and sold insurance in Mississippi and in Memphis. Beginning in 1994, she began selling insurance for MONY out of MONY's Little Rock office, and in that year, although she continued to own her home in Grenada and to stay there on the weekends or while not out selling insurance, Thornton began staying with her aunt in Memphis some during the work week; after she could "afford to do better," she began staying in a motel in Memphis because she could

work better, i.e., without interruption, in the motel. She continued this living arrangement after she left MONY's employ in 1998 and she and her brother joined forces as independent insurance brokers selling insurance products in various locales, but predominately in the Memphis area. In 2000, however, after her daughter and son-in-law leased an apartment in anticipation of moving to Memphis,[2] Thornton began staying at her daughter's apartment during the work week, at least during times when she and her brother were not "off working on the road," since the apartment, on which she and her brother split the rent, was cheaper than a motel.

It appears that throughout the time from 1994, Thornton stayed in Memphis during the week only (and then only if she and her brother were not "on the road"— and according to Thornton, they were on the road "a lot"), and she returned to Mississippi on the weekends where she stayed at her own home in Grenada until it was foreclosed in 2000 and thereafter stayed at her brother's home in Bruce.

Bearing these facts in mind, the court turns to those factors to which the courts typically will look to ascertain a person's domicile, including where she resides, works, pays taxes, has family, obtained her driver's license, is registered to vote and votes, owns real and personal property, does her banking, attends church or has membership in clubs or other organizations. *See Cosby v. Liles*, No. 2:96CV1–B–B, 1996 WL 408864, at *1–2 (N.D.Miss. June 26, 1996); *Knapp v. State Farm Ins.*, 584 F.Supp. 905, 907 (E.D.La.1984). An evaluation of these factors in light of the facts respecting Thornton's domicile as they existed at the time this suit was filed and removed, without reference to

---

**2.** Although her daughter's move to Memphis never came to pass, Thornton's daughter maintained the apartment because she and

her husband had many friends in Memphis with whom they liked to visit and because they enjoyed spending weekends in Memphis.

the circumstances that preceded those dates, does not necessarily point strongly to one state or the other as Thornton's domicile. When this suit was filed and removed, Thornton resided part time in both Mississippi and Tennessee; she worked in Tennessee; she had a Tennessee driver's license;[3] she had a Mississippi resident insurance agent's license and a nonresident's license in Tennessee;[4] she maintained her business phone number at the Memphis apartment; she had no Mississippi telephone in her name; she received her business mail in Tennessee; she received her personal mail in Bruce; she paid rent and utilities at the Memphis apartment (though the apartment and util-

ities were and are in her daughter's name); she paid no "rent" as such on her brother's home in Bruce, but she otherwise contributed financially to the household by purchasing needed items; she owned no realty in Tennessee or in Mississippi (her home in this state having been foreclosed on in 2000); she leased a storage facility in Mississippi where she housed items of personal property following the foreclosure of her home; she had no bank accounts in either Mississippi or in Tennessee, though she did obtain loans from Mississippi lending institutions; she attended church at Mayes Chapel in Reed, Mississippi; and she intends to file her 2001 tax return in Mississippi.[5]

**3.** MONY places great significance on the fact that Thornton has a Tennessee driver's license rather than a Mississippi license. It submits that this is peculiarly indicative of a Tennessee domicile since Tennessee law requires an individual to obtain a Tennessee driver's license if she lives in the state longer than thirty days, has taken employment or would otherwise qualify as a registered voter, and since Mississippi law requires that one who moves to Mississippi must surrender driver's licenses from other states and must obtain a Mississippi license within sixty days of her move. The court does not share MONY's view as to the degree of significance of this particular factor, since federal law, not state law, governs the determination of domicile for purposes of determining whether there is diversity of citizenship. *See Mas v. Perry*, 489 F.2d 1396, 1399 (5th Cir.1974) ("This determination of one's State Citizenship for diversity purposes is controlled by federal law, not by the law of any State."). And what is determinative for that purpose is where that person intends to make his home, and not merely where she resides or where she works, factors which might bear on her decision as to where to secure a driver's license.

The court would observe further that when Thornton first obtained her Tennessee driver's license in 1993, according to her testimony, she was actually living in the home she owned in Mississippi *and* working out of an office she maintained in Mississippi. Moreover, Thornton testified that when she renewed her license in 1998, she considered herself to be a

Mississippi resident, and the address she provided to get her license in Tennessee was not the address of her daughter's apartment, but the address of her aunt, even though there is nothing to indicate that she ever stayed with her aunt during that time frame.

**4.** MONY points out with respect to Thornton's Mississippi agent's license that she did not renew that license when it expired on December 31, 2001 and that she therefore *currently* has no Mississippi license. The fact that she does not now have a Mississippi license, for whatever reason, is not germane to the issue of where she was domiciled in the fall of 2001, when this case was filed and removed. *See Coury v. Prot*, 85 F.3d 244, 248–49 (5th Cir.1996) ("In cases removed from state court, diversity of citizenship must exist both at the time of filing in state court and at the time of removal to federal court.").

**5.** The court would agree with MONY that the fact of where Thornton plans to file her state income tax return is not especially revealing, since Tennessee does not impose a state tax on an individual's salary or wages but only on dividend and interest income, so that Thornton would have nothing to report in Tennessee, and since she would have to file a Mississippi tax return on earned income derived from Mississippi, so long as she "resides" in Mississippi, regardless of where she is domiciled. *See State Tax Comm'n v. Earnest*, 627 So.2d 313 (Miss.1993).

However, because of the "presumption in favor of the continuing domicile," *Coury*, 85 F.3d at 250, a proper assessment of the relevance of these facts which existed at the time this suit was commenced and removed must take into account the relevant facts that preceded this time frame. *See Stine v. Moore*, 213 F.2d 446, 447 (5th Cir.1954) (stating that when it is shown that an individual had a former domicile, the presumption is that it continues to exist, and the burden shifts to the party seeking to establish jurisdiction to prove that it has changed).

From the facts of record recounted *supra*, it appears that from 1970 to the present, Thornton actually worked and lived exclusively in Tennessee for only a brief period of time in the mid–1980s when she worked for MetLife. Even if the court were to assume for the sake of argument that her work and residency in Tennessee during that time constituted a change from her previous domicile in Mississippi, the facts reveal that immediately following that MetLife employment, she returned to Mississippi, where she lived continuously and exclusively for a period of time approaching ten years. She thereby clearly resumed or reestablished her Mississippi domicile. And although after that, she did spend her work time in Memphis (when she was not "on the road"), at first with her aunt, then at a motel, and then at the apartment leased by her daughter, she has continued to the present day to maintain a "home" in Mississippi—at first her own house and then the home she shares with her brother. These facts are consistent, in the court's view, with Thornton's testimony that she considers Mississippi to be her home.[6] Moreover, these facts, in the court's opinion, foreclose the conclusion urged by MONY—which is to say, the evidence of record cannot reasonably be interpreted as establishing that Thornton has changed her domicile from Mississippi to Tennessee. *Cf. Wasson v. Northrup Worldwide Aircraft Services, Inc.* 443 F.Supp. 400, 405–06 (W.D.Tex.1978) (finding that "a move undertaken for employment purposes, standing alone as the sole objective fact, [was] insufficient to establish a change in citizenship.").

In summary, then, considering all of the facts in the evidence submitted to the court, the court finds that Thornton was a domiciliary of Mississippi at the time this suit was filed and removed. Therefore this court lacks jurisdiction over this action because there is incomplete diversity of citizenship. It follows that this case is due to be remanded.

It is, therefore, ordered that plaintiff's motion to remand is granted.

---

6. It is said that "[i]n determining one's 'citizenship' or 'domicile' statements of intent are entitled to little weight when in conflict with facts." *Hendry v. Masonite Corp.*, 455 F.2d 955, 956 (5th Cir.1972); *Stine v. Moore*, 213 F.2d 446, 448 (5th Cir.1954) ("Mere mental fixing of citizenship is not sufficient. What is in another man's mind must be determined by what he does as well as by what he says."). Here, Thornton's statement does not conflict with the facts.