Joseph M. SARMIENTO, D.V.M.,
Plaintiff–Appellee,

v.

TEXAS BOARD OF VETERINARY MEDICAL EXAMINERS, By and Through its Chief Executive Officer, Ed B. AVERY, D.V.M., et al., Defendants,

Nora Seidensticker,
Defendant–Appellant.

No. 89–5636.

United States Court of Appeals,
Fifth Circuit.

Aug. 28, 1991.

Calhoun Bobbitt, Bobbitt & Halter, San Antonio, Tex., for Seidensticker.

Lou Bright, Jim Mattox, Atty. Gen., Austin, Tex., Randall Bruce Richards, Hollon, Marion & Richards, Ronald F. Becker, Gish, Radtke & Becker, Boerne, Tex., Richard A. Wagner, David W. Rogers, San Antonio, Tex., for Sarmiento.

Before WISDOM, GARWOOD and JOLLY, Circuit Judges.

GARWOOD, Circuit Judge:

Defendant-appellant Nora Seidensticker (Seidensticker) appeals a judgment on a state law claim of slander brought by plaintiff-appellee Dr. Joseph Sarmiento (Sarmiento). Finding that the district court lacked subject matter jurisdiction to hear Sarmiento's claims against Seidensticker, we vacate the judgment with instructions to dismiss.

### Facts and Proceedings Below

In 1985, Sarmiento moved with his wife to the small town of Comfort, Texas, intending to establish a veterinary practice. Not long thereafter, through a bizarre series of events, Sarmiento lost his practice, his reputation, and finally, his wife.

According to Sarmiento, the first step leading to his downfall was a dispute over a house between him and Jack Hall, a resident of Comfort. As a result of that dispute, Hall allegedly threatened Sarmiento that Hall's mother (Seidensticker), who ran a local cafe, would use her connections with the local law enforcement officers to ruin Sarmiento's business and drive him from the town.

A few weeks later, on October 24, 1986, an undercover investigator with the Texas Board of Veterinary Medical Examiners (TBVME), acting on a tip that Sarmiento was not licensed to practice veterinary medicine in Texas,[1] brought a dog into Sarmiento's clinic for treatment. Sarmiento examined the dog and administered a rabies vaccine. On October 29, Sarmiento was arrested by local sheriffs, who made quite a display by arriving in five police cars and handcuffing Sarmiento in the presence of his wife, his pastor, several clients, and a reporter from a local radio station. The officers engaged in an investigation following Sarmiento's arrest with similar zeal, ransacking Sarmiento's clinic in search of narcotics, and confiscating nearly all of his medical equipment, including Sarmiento's conspicuously labeled mobile veterinary van. Sarmiento was taken to jail and charged with, *inter alia*, practicing medicine without a license and dispensing illegal narcotics. Although Sarmiento was able to post bail and obtain his release from jail the next day, his van remained

---

1. Apparently, Hall made an informal inquiry to Dr. Billy Trimmier, former President of the TBVME, regarding the licensing status of Sarmiento. Dr. Trimmier relayed the inquiry to Donald Wilson, then Executive Secretary of the TBVME, who initiated the investigation of Sarmiento and his clinic.

The "tip" proved to be accurate. When Sarmiento moved to Texas, he had allowed his Florida veterinary license to be placed on inactive status. His first attempt to obtain a license in Texas was unsuccessful, and Sarmiento did not pass the Texas licensing examination until 1987. Therefore, at all times relevant to the events in this case, Sarmiento could not legally practice veterinary medicine in any state.

parked in front of the courthouse for four days as a constant reminder of Sarmiento's arrest. All charges against Sarmiento were subsequently dropped, but not before two area newspapers recounted in detail the events surrounding Sarmiento's arrest.

These events had a profound effect on Sarmiento and his family. Sarmiento's notorious arrest precipitated a sharp decline in his business such that it was no longer viable; the clinic was finally closed in March of 1989. His personality was also affected, which led to marital difficulties culminating in divorce. Finding his newly adopted community to be less than comforting, Sarmiento subsequently left to practice in Florida.

Meanwhile, on October 29, 1987, while still a Texas resident and citizen, Sarmiento filed a complaint in federal district court[2] under 42 U.S.C. §§ 1983 and 1988 alleging civil rights violations by several named defendants: the TBVME; the County of Kendall, Texas; six officers of Kendall County Sheriff's Department; and the veterinarian who provided the tip to the TBVME. All defendants were citizens of Texas. Jurisdiction was alleged with respect to these claims under 28 U.S.C. §§ 1331 (federal question) and 1343(a)(3) and (4) (civil rights); Sarmiento also invoked the pendent jurisdiction of the district court over two causes of action grounded on common law slander, one of which was against Seidensticker, likewise a Texas citizen. Notably, no federal claims were asserted against Seidensticker.[3] The claims against the other defendants were disposed of before trial by stipulation or dismissed on the grounds of qualified immunity, leaving only the slander claim against Seidensticker to proceed to trial. However, neither

2. The operative complaint now before us is the third amended complaint, which was filed August 26, 1988.

3. The only portion of Sarmiento's third amended complaint that refers to Seidensticker reads as follows:

"*Seventh Cause of Action*

37. The allegations contained in paragraphs one (1) through thirty-six (36) are incorporated by reference.

38. At all times mentioned, Plaintiff was a licensed veterinarian and owner of the Comfort Veterinary Hospital, a business specializing [in] the treatment of both large and small animals. Plaintiff has for the past three (3) years resided continuously in Kendall County, Texas, and at all times up until the incident made the basis of this lawsuit, enjoyed a good reputation generally and in his business.

39. Plaintiff further alleges and contends that on or after October 30, 1986, various defamatory and slanderous statements regarding Plaintiff's character, alleged criminal activities, business reputation and background were made by Stanley G. Harris, D.V.M., Nora Seidensticker and Bill Adams, which were published to third parties. More specifically, on or about October 30, 1986, at approximately 7:15 p.m., while at the Chicken Palace located in Comfort, Kendall County, Texas, Defendant, Nora Seidensticker, made various defamatory remarks including, but not limited to, the following:

a. That Dr. Sarmiento had been dispensing narcotics;

b. That Dr. Sarmiento did not have a license to practice veterinary medicine, and in fact, they, being the Kendall County Sheriff Department, checked and he did not have a license in any state;

c. That Dr. Sarmiento had been involved with the Mafia and had to come here, meaning Comfort, Texas, to get away from them, implying the Mafia, in that he [had] made a deal with the Mafia to leave him alone;

d. That the State brought three different healthy dogs down to the Comfort Veterinary Hospital and that Dr. Sarmiento had found some rare disease that would cost a lot of money to cure them all; and

e. That all the people that had brought animals out to the Comfort Veterinary Hospital that died would be suing Dr. Sarmiento.

40. Accordingly, the content of the statements made by Defendant, Nora Seidensticker, would warn a reasonably prudent person of its defamatory potential, in that it charges the Plaintiff with the commission of various crimes and illicit business activities.

41. Plaintiff would state that relative to Defendant Seidensticker's defamatory remarks, that Plaintiff has never dispensed narcotics in the manner indicated by Defendant, that he was and has been continuously licensed in the State of Florida, that he has never been involved nor had dealings with the Mafia, and that by the State's own admission, it presented one (1) rather than three (3) animals to Plaintiff, relative to their investigation on or about October 24, 1986, with no rare disease being found even in the animal examined. Finally, no individual has filed a claim or lawsuit against Dr. Sarmiento concerning his treatment of any animals brought under the care of the Comfort Veterinary Hospital on or before October 29, 1986."

party questioned the district court's jurisdiction at that point.

At trial, Sarmiento proceeded to prove that certain defamatory statements by Seidensticker caused injury to his business and his reputation. Three residents of Comfort testified that they had heard Seidensticker discuss Sarmiento disparagingly in front of patrons in her cafe. The six-member jury concluded that Seidensticker had in fact maliciously made damaging slanderous remarks, and awarded Sarmiento to $600,000 in actual and punitive damages. This appeal followed.

Seidensticker raises two points of error: (1) the district court lacked subject matter jurisdiction to hear Sarmiento's slander claim against her; and (2) the evidence was insufficient to support the jury's findings. Because we conclude that the district court lacked subject matter jurisdiction to hear the case against Seidensticker, which involved only a state law claim, we do not reach Seidensticker's point of error on sufficiency of the evidence.

## Discussion

 It is a fundamental principle of federal jurisprudence, too basic to require citation of authority, that the federal courts are courts of limited jurisdiction. They are empowered to hear only those cases that are within the constitutional grant of judicial power, and that have been entrusted to them by a jurisdictional grant enacted by Congress. *See Insurance Corp. of Ireland v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 102 S.Ct. 2099, 2104, 72 L.Ed.2d 492, *cert. denied*, 457 U.S. 1105, 102 S.Ct. 2902, 73 L.Ed.2d 1312 (1982). Due to the nature of the federal courts, a lack of subject matter jurisdiction may not be waived by the parties by consent, conduct, or even by estoppel. *See American Fire & Casualty Co. v. Finn*, 341 U.S. 6, 71 S.Ct. 534, 541–42, 95 L.Ed. 702 (1951); *Ziegler v. Champion Mortgage Co.*, 913 F.2d 228, 229 (5th Cir. 1990). This doctrine is reenforced by the Federal Rules of Civil Procedure, which provide that "whenever it appears by suggestion of the parties or otherwise that the court lacks jurisdiction of the subject matter, the court shall dismiss the action." Fed.R.Civ.P. 12(h)(3). Moreover, "[a]n appellate federal court must satisfy itself not only of its own jurisdiction, but also that of the lower courts in a cause under review." *Ziegler*, 913 F.2d at 229 (citing *Mitchell v. Maurer*, 293 U.S. 237, 55 S.Ct. 162, 165, 79 L.Ed. 338 (1934)). Therefore, even at this late stage of the proceedings, we are bound to determine whether the district court properly exercised jurisdiction over Sarmiento's slander claim against Seidensticker.

### A. Federal Question Jurisdiction

 We first evaluate Sarmiento's pleadings to determine whether they allege a federal claim against Seidensticker, noting that if a federal question exists, it must appear in the complaint. Generally, if it appears from the face of the complaint that a federal claim is without merit, the court should dismiss for failure to state a claim, and not on jurisdictional grounds. *Bell v. Hood*, 327 U.S. 678, 66 S.Ct. 773, 776, 90 L.Ed. 939 (1946). However, dismissal for want of jurisdiction is appropriate if the federal claim is frivolous or a mere matter of form. *Hagans v. Lavine*, 415 U.S. 528, 94 S.Ct. 1372, 1382, 39 L.Ed.2d 577 (1974); *Bell*, 66 S.Ct. at 776.

Sarmiento's federal claims, which alleged civil rights violations of the Fifth and Fourteenth Amendments, and several Texas statutes, were brought under 42 U.S.C. § 1983.[4] Section 1983 provides:

"Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be

---

**4.** Section 1988, also pleaded by Sarmiento, does not create an independent federal cause of action; it is essentially a procedural statute. *Moor v. Alameda County*, 411 U.S. 693, 93 S.Ct. 1785, 1792, 36 L.Ed.2d 596 (1973).

liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress...." 42 U.S.C. § 1983.

The persons expressly sued by Sarmiento under this provision were government entities, representatives or employees. In contrast, Seidensticker was sued as a private individual; indeed, she ran a small cafe and had no ties to any government body or agency. Although the Supreme Court has held that a private person who is a willful participant in a joint activity with the state is acting under color of state law for purposes of section 1983, *see Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 102 S.Ct. 2744, 2749 n. 9, 73 L.Ed.2d 482 (1982), nowhere in the complaint does Sarmiento allege that Seidensticker was engaged in any conspiracy with the governmental officials or employees. In his seventh cause of action, which is the only cause of action against Seidensticker, Sarmiento refers only to alleged slanderous statements made to "third parties" by Seidensticker. Although Sarmiento incorporates the preceding allegations in the complaint "by reference," there is absolutely no allegation whatsoever, in any part of the complaint, that Seidensticker acted in concert with any governmental officials or employees to trump up criminal charges or otherwise take action against Sarmiento. In fact, the alleged slanderous remarks by Seidensticker purportedly were made on October 30, 1986, the day *after* the much publicized arrest.[5]

Sarmiento's complaint alleges as to Seidensticker only a state law claim and provides no colorable basis for the assertion of federal question jurisdiction over Seidensticker.

## B. Pendent–Party Jurisdiction

Because the district court had no independent federal jurisdictional basis over Seidensticker,[6] and the claims against her sound entirely in state law, this case raises the problem of pendent-party jurisdiction, a variant of pendent-claim jurisdiction. The viability of pendent-party jurisdiction, which encompasses not only hearing additional claims between parties already properly before the court, but also the joining of additional parties over whom there is no independent basis of federal jurisdiction, has been much debated since the Supreme Court's recognition of pendent-claim jurisdiction in *United Mine Workers v. Gibbs*, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966).[7] In the face of this debate, the Supreme Court began to whittle away at the concept, beginning with *Aldinger v. Howard*, 427 U.S. 1, 96 S.Ct. 2413, 49 L.Ed.2d 276 (1976), in which the Court differentiated between pendent-claim jurisdiction and pendent-party jurisdiction, noting:

"From a purely factual point of view, it is one thing to authorize two parties, already present in federal court by virtue of a case over which the court has jurisdiction, to litigate in addition to their

---

5. This analysis is not changed by the allegation in paragraph 9 of the complaint that Seidensticker's son made an informal inquiry to TBVME to verify Sarmiento's licensing status. To begin with, there is no allegation that Seidensticker had anything to do with her son making this inquiry (let alone that anything she did in that respect was wrongful). Moreover, no claim is purportedly made against Seidensticker on account of that inquiry. Finally, a private person does not conspire with a state official, for purposes of § 1983 liability, merely by invoking an exercise of the state official's authority. *See Daniel v. Ferguson*, 839 F.2d 1124, 1130 & n. 13 (5th Cir.1988); *Sims v. Jefferson Downs Racing Ass'n*, 778 F.2d 1068, 1079 & n. 7 (5th Cir.1985); *Tarkowski v. Robert Bartlett Realty Co.*, 644 F.2d 1204, 1206, 1208 (7th Cir.1980).

6. Although Sarmiento is currently domiciled in Florida, at the time he filed suit he was domiciled in Texas, as he also was when his third amended complaint was filed. Therefore, and neither party contests this, the jurisdiction of the district court could not be based on diversity of citizenship pursuant to 28 U.S.C. § 1332. *See American Foundation, Inc. v. Mountain Lake Corp.*, 454 F.2d 200, 202 (5th Cir.1972) (holding that a change in citizenship during the pendency of a suit cannot create diversity jurisdiction).

7. In *Gibbs*, the Supreme Court upheld the concept of pendent-claim jurisdiction on a judicial economy principle, allowing addition of state claims that arose from a "common nucleus" of fact with the federal claims, such that a party "would ordinarily be expected to try them all in one proceeding...." *Gibbs*, 86 S.Ct. at 1138.

federal claim a state-law claim over which there is no independent basis of federal jurisdiction. But it is quite another thing to permit a plaintiff, who has asserted a claim against one defendant with respect to which there is federal jurisdiction, to join an entirely different defendant on the basis of a state-law claim over which there is no independent basis of federal jurisdiction, simply because his claim against the first defendant and his claim against the second defendant 'derive from a common nucleus of operative fact.' ... [T]he addition of a completely new party would run counter to the well-established principle that federal courts, as opposed to state trial courts of general jurisdiction, are courts of limited jurisdiction marked out by Congress." *Aldinger,* 96 S.Ct. at 2420 (quoting *Gibbs,* 86 S.Ct. at 1138).

The Court, however, refused "to formulate any general, all-encompassing jurisdictional rule," and instead focused squarely on the precise issues before it. *Id.* at 2419. The plaintiff had brought her suit under 42 U.S.C. § 1983 against several individuals. Spokane County, Washington, was also a named defendant, but the claims against it, though arising out of the same facts, were based solely on state law, as counties were then not deemed to be "persons" within section 1983.[8] The Court found that the relevant jurisdictional statute was 28 U.S.C. § 1343 because in the then current state of the law counties were excluded from liability under section 1983. *Id.* at 2421. Giving "careful attention to the relevant statutory language," the Court concluded that 28 U.S.C. § 1343 and 42 U.S.C. § 1983 required a holding that the federal courts had no jurisdiction over state law claims brought against parties excluded from liability under these statutes. *Id.* at 2421–2422. The Court expressly left open the question of whether pendent-party jurisdiction would be proper in a situation in which the federal courts had exclusive jurisdiction over the plaintiff's federal claims, since only in the federal forum could all of the claims be tried together. *Id.* at 2422.

■ The *Aldinger* decision gave only a partial answer to the question of pendent-party jurisdiction, and for several years the subsequent cases did "not fall into any single pattern." 13B C. Wright, A. Miller & E. Cooper, *Federal Practice & Procedure,* § 3567.2 (1984). However, the Supreme Court's decision in *Finley v. United States,* 490 U.S. 545, 109 S.Ct. 2003, 104 L.Ed.2d 593 (1989),[9] has largely ended the debate on the scope and continued viability of the concept of pendent-party jurisdiction. Although the *Finley* court assumed, without deciding, that pendent-party jurisdiction would be within the constitutional grant of federal judicial power, it held that "an affirmative grant of pendent-party jurisdiction" must be found in a statute. *Finley,* 109 S.Ct. at 2009. The Court stated: " ... *Aldinger* indicated that the *Gibbs* approach would not be extended to the pendent-party field, and we decide today to retain that line." *Id.* at 2010. *Finley* also put to rest the exclusive jurisdiction dicta in *Aldinger,* holding that even under the Federal Tort Claims Act, over which the federal courts have exclusive jurisdiction, the federal courts may not entertain pendent-party state claims. *Finley* at 2009–2010. Therefore, the present operating principle is that pendent-party jurisdiction does not exist, unless Congress has expressly spoken to allow it. Accordingly, this Court, along with others, has read *Finley* as sounding the death knell for pendent-party jurisdiction. *See, e.g., Iron Workers Mid–South Pension Fund v. Terotechnology Corp.,* 891 F.2d 548, 551 (5th Cir.) (holding that pendent parties may not be joined in an ERISA action), *cert. denied*

---

**8.** *See Monroe v. Pape,* 365 U.S. 167, 81 S.Ct. 473, 484–86, 5 L.Ed.2d 492 (1961), overruled in this respect by *Monell v. New York Department of Social Services,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978).

**9.** Although both parties briefed the issue of subject matter jurisdiction, the effect of *Finley* was not raised or addressed by the district court below, or by the parties prior to oral argument. This Court, on its own motion, asked the parties to address *Finley* during oral argument.

*sub nom Iron Workers Mid–South Pension Fund v. Borden Chemical,* — U.S. ——, 110 S.Ct. 3272, 111 L.Ed.2d 782 (1990);[10] *Staffer v. Bouchard Transportation Co.,* 878 F.2d 638, 643 n. 5 (2d Cir. 1989) (commenting that pendent-party jurisdiction is no longer a viable concept).[11]

■ In our view, *Finley* resolves the present jurisdictional issue with a clear rule of statutory construction. Consistent with the Court's directive in *Finley,* we have examined the statutes underlying Sarmiento's federal claims. However, our task is an easy one because the *Aldinger* court resolved for us in the negative the issue of whether section 1983 grants pendent-party jurisdiction.[12] *See Ortega v. Schramm,* 922 F.2d 684, 690–93 (11th Cir.1991). *See also Stallworth v. City of Cleveland,* 893 F.2d 830, 838 (6th Cir.1990). Accordingly, applying the clear interpretive rule set out in *Finley,* we hold that Sarmiento's claims

against Seidensticker must be dismissed for lack of subject matter jurisdiction.[13]

## Conclusion

For the reasons stated, the judgment of the district court against Seidensticker is VACATED, and the case is REMANDED with instructions to DISMISS Sarmiento's claims against Seidensticker for want of subject matter jurisdiction.

---

**10.** Sarmiento argues that exercise of pendent jurisdiction is within the discretion of the district court, citing this Court's decision in *Slaughter v. Allstate Ins. Co.,* 803 F.2d 857, 861 (5th Cir.1986). *Slaughter* did involve a question of pendent-party jurisdiction. This Court sustained the district court's refusal to exercise such jurisdiction, noting that it was never invoked below and then stating, without citation of authority, that "even when properly invoked, the exercise of pendent jurisdiction is left to the discretion of the district judge." *Slaughter,* 803 F.2d at 861. However, *Slaughter* was decided before the Supreme Court's decision in *Finley,* and accordingly any implication from its dicta that the district court has discretion to exercise pendent-party jurisdiction (where not provided by statute) can no longer be regarded as authoritative.

**11.** Despite the seemingly narrow arena available for pendent-party jurisdiction after *Finley,* some courts have continued to allow pendent-party claims. *See Nolan v. Boeing Co.,* 919 F.2d 1058, 1062–66 (5th Cir.1990), where we held that 28 U.S.C. § 1441(d), the removal statute enacted as part of the Foreign Sovereign Immunities Act, contemplates removal by the foreign state third-party defendant not merely of the claims against it, but rather of the entire suit, including the main claims, "at least where minimal diversity exists between the parties to the main claims." In *Nolan* there was actually complete diversity at the time of removal, and there had always been minimal diversity. *Id.* at 1063. Here, by contrast, there has never been even

minimal diversity, as all parties have been Texas citizens at all relevant times.

See also *Teledyne, Inc. v. Kone Corp.,* 892 F.2d 1404, 1409–10 (9th Cir.1989) (holding that the Foreign Sovereign Immunities Act, 28 U.S.C. § 1330, does provide for pendent-party jurisdiction); *Roco Carriers, LTD. v. M/V Nurnberg Exp.,* 899 F.2d 1292, 1296–97 (2d Cir.1990) (allowing pendent-party jurisdiction in an admiralty case).

**12.** Further, section 1988, which contains only procedural provisions governing civil rights actions and attorneys' fees in such actions, contains no language that would allow us to conclude that Congress intended to grant jurisdiction over pendent parties.

**13.** Sarmiento also urges that dismissal for lack of jurisdiction would work a hardship against him because the state statute of limitations has run and he would not be able to refile in state court. Such hardship, however, cannot serve to vest us with subject matter jurisdiction. Fortunately for Sarmiento, Texas has a "savings statute," which allows a litigant sixty days to refile in state court if his case is dismissed for want of jurisdiction. Tex.Civ.Prac. & Rem.Code, § 16.064 (Vernon 1986). This Circuit in *In re Paso Del Norte Oil Co.,* 755 F.2d 421, 426 n. 7 (5th Cir.1985) noted that this provision applies even to cases dismissed by a federal court for want of jurisdiction. Accordingly, following the dismissal of this case for lack of subject matter jurisdiction, Sarmiento will apparently still be able to file in state court.