REVISED NOVEMBER 25, 2002

# IN THE UNITED STATES COURT OF APPEALS

# FOR THE FIFTH CIRCUIT

No.  01-20245

ATLAS GLOBAL GROUP, L.P.,                                Plaintiff-Counter Defendant-Appellant,

and

OSCAR ROBLES-CANON,
officer with Atlas Global Group,

FRANCISCO LLAMOSA,
officer with Atlas Global Group,                         Counter Defendants-Appellants,

versus

 GRUPO DATAFLUX,                                         Defendant-Counter Claimant-Appellee.

Appeal from the United States District Court
for the Southern District of Texas

November 22, 2002

Before EMILIO M. GARZA, BENAVIDES, and STEWART, Circuit Judges.

CARL E. STEWART, Circuit Judge:

Atlas Global Group, L.P. ("Atlas") appeals from the district court's grant of Grupo Dataflux's ("Dataflux") motion to dismiss for lack of subject matter jurisdiction. For the reasons stated herein, we REVERSE and REMAND for the entry of judgment in favor of Atlas.

## FACTUAL AND PROCEDURAL HISTORY

Atlas is a limited partnership created under Texas law. Dataflux is a Mexican corporation. On November 18, 1997, Atlas brought suit in the Southern District of Texas against Dataflux alleging breach of contract and quantum meruit. Jurisdiction was predicated solely upon the grounds of diversity pursuant to 28 U.S.C. § 1332(a) (1993). At the time the complaint was filed, Atlas's partnership was comprised of five members: (1) Bahia Management, L.L.C., a Texas limited liability company; (2) Capital Financial Partner, Inc., a Delaware corporation; (3) HIL Financial Holdings, L.P., a Texas limited partnership; (4) Francisco Llamosa, a Mexican citizen; and (5) Oscar Robles-Canon, a Mexican citizen. Shortly before trial, however, Atlas completed a business transaction which removed the two Mexican citizens as partners. After a six-day jury trial, the jury awarded $750,000 in damages to Atlas, finding that Dataflux breached its contract with Atlas. Subsequently, Dataflux moved to dismiss, arguing that the district court lacked subject matter jurisdiction because at the time the complaint was filed, two of Atlas's partners, like Dataflux, were Mexican citizens. The motion was granted. Atlas filed a motion to alter or amend the judgment, which was denied. Atlas appealed.

## STANDARD OF REVIEW

We review dismissals for lack of subject matter jurisdiction *de novo*. Whatley v. Resolution Trust Corp., 32 F.3d 905, 907 (5th Cir. 1994).

## DISCUSSION

2

The parties do not challenge the rule that, for purposes of determining diversity jurisdiction, a partnership is a citizen of each jurisdiction in which its individual partners are citizens. See Carden v. Arkoma Assocs., 494 U.S. 185, 195 (1990) ("We adhere to our oft-repeated rule that diversity jurisdiction in a suit by or against the entity depends on the citizenship of 'all the members.' "). Likewise, the parties do not dispute that there was complete diversity when the trial of this matter commenced. Instead, Dataflux asserts that because the parties were not diverse at the time the complaint was filed, the case was properly dismissed for lack of subject matter jurisdiction. Atlas counters that this initial lack of diversity is not determinative. It maintains that the lack of diversity was remedied prior to trial and, therefore, the district court had jurisdiction.

"The existence of federal jurisdiction ordinarily depends on the facts as they exist when the complaint is filed." Newman-Green, Inc. v. Alfonzo-Larrain, 490 U.S. 826, 830 (1989). However, the Supreme Court has recognized that, as with most general principles, there are exceptions. Id. In Caterpillar, Inc. v. Lewis, 519 U.S. 61 (1996), and Newman-Green, the Supreme Court carved out two such exceptions. Both of these cases are heavily relied upon by Atlas.

A.    Newman-Green

In Newman-Green, the question presented was whether the court of appeals had the authority, pursuant to Federal Rule of Civil Procedure 21, to dismiss a dispensable non-diverse party whose presence spoiled statutory diversity jurisdiction. 490 U.S. at 827. Newman-Green, an Illinois corporation, brought a contract action in federal court against a Venezuelan corporation, four Venezuelan citizens, and William L. Bettison, a United States citizen domiciled in Venezuela. Id. at 828. The district court granted partial summary judgment against Newman-Green and an appeal followed. Id. On appeal, the Seventh Circuit *sua sponte* raised the issue of statutory jurisdiction, i.e.,

3

that jurisdiction did not exist under 28 U.S.C. ' 1332(a)(2) or (3) because Bettison was a citizen of the United States, but not of any state, and therefore the suit was not either solely against aliens or against aliens and diverse citizens. Id. The panel concluded, however, that Bettison was a dispensable party, and could be dismissed to perfect statutory jurisdiction. Id. at 829. The Supreme Court agreed. While recognizing the rule that "[t]he existence of federal jurisdiction ordinarily depends on facts as they exist when the complaint is filed," the Court held that, "[l]ike most general principles . . . this one is susceptible to exceptions." Id. at 830. The court concluded that a circuit court's power to dismiss a party pursuant to Rule 21 was one such exception. Id. at 837.

Although Newman-Green is distinguishable because Rule 21 is not at issue in the case before us, we find its underlying policy theme instructive. The Court in Newman-Green stressed that "requiring dismissal after years of litigation would impose unnecessary and wasteful burdens on the parties, judges, and other litigants waiting for judicial attention." Id. at 836. It is this rationale that persuaded the Court in Newman-Green and again in Caterpillar.

B.     Caterpillar

In Caterpillar, James David Lewis commenced a civil action in state court against Caterpillar and Whayne Supply. 519 U.S. at 64-65. Lewis and Whayne Supply were both citizens of Kentucky. Id. Subsequently, Liberty Mutual intervened as a plaintiff, asserting subrogation claims against both Caterpillar and Whayne Supply. Id. at 65. After Lewis settled with Whayne Supply, Caterpillar removed the action, asserting diversity jurisdiction. Id. Lewis moved for remand, contending correctly that there was not complete diversity because Liberty Mutual's claims against Whayne Supply kept it in the suit. Id. at 65-66. The district court erroneously denied the motion. Prior to trial, Liberty Mutual settled with Whayne Supply. Id. at 66. The action proceeded to trial, resulting

4

in a judgment for Caterpillar.  Id. at 66-67.  The Sixth Circuit reversed, concluding that the error of the court in failing to remand made it necessary to vacate the district court judgment.  Id. at 67.

The Supreme Court reversed the Sixth Circuit, effectively reinstating the jury verdict.  Id. at 78.  The Court held that a "district court's error in failing to remand a case improperly removed is not fatal to the ensuing adjudication if federal jurisdiction requirements are met at the time judgment is entered."  Id. at 64; see also Howery v. Allstate Ins. Co., 243 F.3d 912, 916 & n.5 (5th Cir. 2001) (citing Caterpillar for this proposition); H&D Tire & Automotive-Hardware, Inc. v. Pitney Bowes, Inc., 227 F.3d 326, 328 (5th Cir. 2000) (same).  Addressing the  jurisdictional problem specifically, the Court provided that any "*jurisdictional* defect was cured, *i.e.,* complete diversity was established before the trial commenced.  Therefore the Sixth Circuit erred in resting its decision on the absence of subject-matter jurisdiction." Caterpillar, 519 U.S. at 73; accord Grubbs v. Gen. Elec. Credit Corp., 405 U.S. 699, 700 (1972) (holding that an erroneous removal need not cause destruction of final judgment if requirements of subject matter jurisdiction are satisfied when judgment is entered).

The Supreme Court then addressed the still-existing statutory problem—the fact that when the action was removed, it was not removable pursuant to 28 U.S.C. ' 1441(a) (1994).  The question remaining was whether this error, which lurked "in the unerasable history of the case," required reversal of the district court.  Caterpillar, 519 U.S. at 73.  The Court concluded that although arguments could be made for reversal on this ground, these arguments failed because they "run up against an overriding consideration.  Once a diversity case has been tried in federal court, with rules of decision supplied by state law under the regime Erie R.R. Co. v. Tompkins, 304 U.S. 64 . . . (1938), considerations of finality, efficiency, and economy become overwhelming." Id. at 75, 77 ("To wipe out the adjudication postjudgment, and return to state court a case now satisfying all federal

5

jurisdictional requirements, would impose an exorbitant cost on our dual court system, a cost incompatible with the fair and unprotracted administration of justice."); see also Knop v. McMahan, 872 F.2d 1132, 1139 n.16 (3d Cir. 1989) ("To permit a case in which there is complete diversity throughout trial to proceed to judgment and then cancel the effect of that judgment and relegate the parties to a new trial in a state court because of a brief lack of complete diversity at the beginning of the case would be a waste of judicial resources. It would also encourage litigants to speculate on the jurisdiction issue by saving it for use in the event of a loss.").

While considerations of finality and judicial economy come into play "[o]nce a diversity case has been tried in federal court," the Court's holding in Caterpillar references the fact that judgment had already been entered. 519 U.S. at 64, 75. Although Dataflux moved for dismissal before the trial court entered judgment, the analysis in Caterpillar compels a conclusion that its exception covers the facts of this case. Caterpillar does not hold that there must always be entry of judgment for an exception to the rule to apply. It merely holds that judgment is sufficient. See In re AT & T Fiber Optic Cable Installation Litig., No. IP 99-9313-C H/K, 2001 WL 1397295, at *5-7 (S.D. Ind. Nov. 5, 2001) (concluding that Caterpillar does not make judgment a prerequisite and stating that "the reasoning of [Caterpillar] extends to district courts even before the formal entry of final judgment. Suppose, for example, that [the] plaintiff [in Caterpillar] first raised the issue after an adverse verdict at trial, but before the judge had actually entered final judgment. Surely the result would be the same–no remand"). Here, the only thing left for the district court to do was enter judgment. It is difficult to distinguish a case where judgment has been entered from a case where nothing is left for the court to do other than enter judgment.

6

Dataflux's attempts to distinguish Caterpillar are not persuasive. First, Dataflux asserts that unlike in Caterpillar, jurisdiction was not cured through a dismissal of a party–it was cured through a unilateral change in citizenship effectuated through a reorganization. Second, it contends that this case was not removed but instead was originally filed in federal court. Finally, it asserts that Newman-Green is distinguishable because it dealt with Rule 21.

### 1. Method of Perfecting Jurisdiction

As to the first ground, Dataflux argues that Caterpillar does not apply in a case where a party has not been dismissed, but instead statutory diversity jurisdiction is perfected by a "unilateral change" in citizenship. While a party was dismissed in Caterpillar, and this is perhaps technically a distinguishing factor, this factor was not at the heart of the Supreme Court's analysis in Caterpillar and Dataflux does not persuasively explain its import. Dataflux opines that extending the exception to cases where jurisdiction was perfected through a unilateral change of domicile would defeat the purpose of the general rule. According to Dataflux, such a rule would require the district court to reevaluate the existence of diversity jurisdiction in each instance in which a party changed its domicile. We recognize that the rule that diversity jurisdiction is determined solely at the outset of the litigation exists precisely to prevent the district court from having to make such determinations. 13B CHARLES ALAN WRIGHT ET AL., FEDERAL PRACTICE AND PROCEDURE ' 3608 (2d ed. 1984). However, our holding today has only a slightly greater effect on the general rule than would the strictest construction of Caterpillar. As in the Caterpillar case, a district judge would only have to reevaluate jurisdiction when it is challenged after a verdict or dispositive ruling. If a party re-organized before this point and jurisdiction were challenged, the general rule would be applied and the re-organization would be of no effect.

7

## 2. Removed Cases vs. Original Federal Forum Cases

Dataflux also focuses on the fact that <u>Caterpillar</u> dealt with a removed case and that this action was originally filed in federal court. The only authority cited by Dataflux in support of its position that the fact that <u>Caterpillar</u> involved a removal action is a controlling distinguishing factor is <u>Saadeh v. Farouki</u>, 107 F.3d 52 (D.C. Cir. 1997). In <u>Saadeh</u>, the D.C. Circuit distinguished its case from <u>Caterpillar</u> on the remand ground, concluding that "[a]lthough we are mindful of the ×considerations of finality, efficiency and economy= that concerned the Supreme Court in <u>Caterpillar</u>, those concerns in the removal context are insufficient to warrant a departure here from the bright-line rule that citizenship and domicile must be determined as of the time a complaint is filed." <u>Id.</u> at 57. Because <u>Saadeh</u> does not provide any analytical justification for its conclusion that removal cases deserve differential treatment, we find it unpersuasive.

Dataflux opines that removal cases are different because removal is subject to judicial control, which decreases the likelihood of jurisdictional manipulation. However, district courts always have a duty to examine jurisdiction regardless of whether a case is removed or was originally filed in the district court. <u>Save The Bay, Inc. v. U.S. Army</u>, 639 F.2d 1100, 1102 (5th Cir. 1981) ("[I]t is incumbent upon federal courts[,] trial and appellate[,] to constantly examine the basis of jurisdiction, doing so on our own motion if necessary."). Furthermore, we find it difficult to imagine that plaintiffs who cannot establish federal jurisdiction will intentionally file an action in federal court in the hope that neither the judge nor the defendant raises the issue, knowing that at any point before a verdict or dispositive ruling, the court or defendants could raise the issue and the case would be dismissed.

We conclude that the exception carved out in <u>Caterpillar</u> applies under the circumstances of this case. The decision in <u>Caterpillar</u> was not limited to removal cases. Undoubtedly, if the Supreme

8

Court had found this to be a dispositive factor, it would have spoken to the issue. The same is true of Dataflux's argument that <u>Newman-Green</u>'s rationale is limited to dismissals pursuant to Rule 21. While it is accurate to describe these cases as removal and Rule 21 cases, respectively, there is nothing that persuades us that the principle of these cases is limited to only the exact same procedural scenarios. See <u>C.L. Ritter Lumber Co., Inc. v. Consolidation Coal Co.</u>, 283 F.3d 226, 229-230 (4th Cir. 2002) (holding that the district court could, post-trial, split a suit into two separate cases to cure a jurisdictional defect and stating that "[t]he specific nature of the remedy implicates the discretion of the court, not its power to act").

In the instant case, this dispute has been completely adjudicated by a federal district court, which had jurisdiction over the parties throughout the trial and at the time the jury rendered its verdict of $750,000 in favor of Atlas. The parties and the court have committed ample resources to its adjudication. They have had the benefit of a full assessment of the evidence by an impartial jury during a six-day trial. To erase the result of that process by requiring them to re-litigate their claims in state court, or likely in federal court, is not necessary under <u>Caterpillar</u>. In so concluding, we remain aware of the limited nature of the district court's jurisdiction and the Supreme Court's caveat against improper expansion of federal jurisdiction. However, this narrow exception applies only where (1) an action is filed or removed when constitutional and/or statutory jurisdictional requirements are not met, (2) neither the parties nor the judge raise the error until after a jury verdict has been rendered, or a dispositive ruling has been made by the court, and (3) before the verdict is rendered, or ruling is issued, the jurisdictional defect is cured. If at any point prior to the verdict or ruling, the issue is raised, the court must apply the general rule and dismiss regardless of subsequent changes in citizenship.

9

## CONCLUSION

For the reasons stated herein, we REVERSE and REMAND with instructions to the district court to enter judgment in favor of Atlas.

REVERSED and REMANDED.

EMILIO M. GARZA, Circuit Judge, dissenting:

This case should be easy. Imagine that a plaintiff from State X filed suit in federal court against a defendant from State X. The plaintiff incorrectly contended in the complaint that the federal court had diversity jurisdiction. Nearly three years passed. Then the plaintiff moved to State Y, creating diversity. Imagine that, after the jury rendered a verdict for the plaintiff, the district court discovered that, at the time the complaint was filed, the parties were not completely diverse ) ) indeed, there was *no* diversity between the parties. The district court would recognize the longstanding rule that diversity jurisdiction is determined at the time the complaint is filed. *Newman-Green, Inc. v. Alfonzo-Larrain*, 490 U.S. 826, 830 (1989). The plaintiff's recent move would make no difference. The district court would dismiss the case for lack of jurisdiction. *See Sarmiento v. Texas Bd. of Veterinary Med. Examiners By and Through Avery*, 939 F.2d 1242, 1246 n.6 (5th Cir. 1991) ("Although Sarmiento is currently domiciled in Florida, at the time he filed suit he was domiciled in Texas, as he also was when his third amended complaint was filed. Therefore, and neither party contests this, the jurisdiction of the district court could not be based on diversity of citizenship pursuant to 28 U.S.C. § 1332.").

The dispute between Atlas Global and Dataflux is precisely the above scenario. Atlas Global is a limited partnership, whose citizenship is determined by the citizenship of all its partners. *Carden v. Arkoma Associates*, 494 U.S. 185, 195-96 (1990). At the time Atlas Global filed its complaint, two of its partners were Mexican citizens. Thus, Atlas was a "citizen" of Mexico. Dataflux was a Mexican corporation. Therefore, the parties were not completely diverse. Indeed, there was *no* diversity between the parties. Nearly three years after filing its

11

complaint, Atlas conducted a business transaction that removed its two Mexican partners, and effectively "moved out of" Mexico. The case went to trial; the jury returned a verdict for Atlas. Then, once the district court discovered the jurisdictional flaw, it dismissed the case.

The majority opinion, however, complicates this simple scenario by creating a new exception to the rule that diversity jurisdiction depends on the citizenship of the parties at the time the complaint is filed. The majority opinion crafts the following "narrow exception": A case will not be dismissed for lack of subject matter jurisdiction where "(1) an action is filed or removed when constitutional and/or statutory jurisdictional requirements are not met, (2) neither the parties nor the judge raise the error until after a jury verdict has been rendered, or a dispositive ruling has been made by the court, and (3) before the verdict is rendered, or ruling is issued, the jurisdictional defect is cured." The majority's exception threatens to swallow the rule.

The majority opinion asserts that this new rule is only a "slight" extension of the Supreme Court's decision in *Caterpillar Inc. v. Lewis*, 519 U.S. 61 (1996). The facts of *Caterpillar* make clear, however, that it has no applicability to a case where a party unilaterally creates diversity jurisdiction.

In *Caterpillar*, Lewis, a citizen of Kentucky, filed state law tort claims in Kentucky state court against Caterpillar (a Delaware corporation with its principle place of business in Illinois) and Whayne Supply, a Kentucky corporation. 519 U.S. at 64-65. Liberty Mutual, Lewis' insurance carrier, intervened in the lawsuit, asserting claims against both Caterpillar and Whayne Supply. *Id.* at 65. Lewis later settled his claims with Whayne Supply. *Id.* Caterpillar then tried to remove the case to federal court, asserting diversity jurisdiction. *Id.* Lewis requested remand, claiming that the district court lacked jurisdiction. *Id.* Lewis correctly pointed out that Liberty

12

Mutual's claim against Whayne Supply kept it in the lawsuit, and, as a result, the parties were not completely diverse. *Id.* at 65-66. The district court erroneously denied his motion to remand. *Id.* at 66. Three years later, and several months prior to trial, Liberty Mutual settled its claims with Whayne Supply, and the district court dismissed Whayne Supply from the lawsuit. *Id.* The Supreme Court held that, because the "jurisdictional defect" (the presence of Whayne Supply) was cured prior to judgment, it was unnecessary to dismiss the case. *Id.* at 76-78.

The majority opinion acknowledges that, in *Caterpillar*, there was no "unilateral change" in citizenship, yet asserts that "this factor was not at the heart of the Supreme Court's analysis in *Caterpillar*[.]" The majority opinion apparently overlooks the Supreme Court's response to Lewis' prediction that creating an exception in his case would "encourag[e] state court defendants to remove cases improperly[.]" *Caterpillar*, 519 U.S. at 77 (internal quotation marks omitted). The Supreme Court rejected this possibility, because it "assume[d] [a party's] readiness to gamble that any jurisdictional defect, for example, the absence of complete diversity, [would] first escape detection, then disappear prior to judgment." *Id.* Under the facts of *Caterpillar*, the party that brought the case to federal court (Caterpillar) would have had to gamble. Caterpillar had to hope that neither the district court nor any appellate court would detect the jurisdictional defect.[1] More significantly for present purposes, Caterpillar had to gamble that Whayne Supply (the party whose presence destroyed diversity) would somehow disappear from the lawsuit. Caterpillar had no control over whether Whayne Supply remained in the case. It just had to sit back and keep its fingers crossed.

---

[1] In *Caterpillar*, it was particularly unlikely that the courts would remain unaware of the jurisdictional flaw, since Lewis had pointed it out in his motion to remand.

13

Atlas, by contrast, faced no such "gamble." As the facts of this case illustrate, Atlas had complete control over whether its two Mexican citizens remained in the company as partners. Atlas could ) ) and did ) ) single-handedly remove the parties whose presence spoiled diversity. It is irrelevant that, in this case, Atlas may have filed its complaint in good faith, genuinely failing to recognize the jurisdictional defect. Under the rule crafted by the majority, a less scrupulous party could deliberately file suit in federal court when diversity was lacking. Such a plaintiff might choose to file quickly because, for example, the statute of limitations on its claim was about to run out. The majority's rule would allow that plaintiff to file its complaint in federal court, knowing that the federal courts did not have jurisdiction, and then move to a new state (or, in the case of a limited partnership, remove a few partners) and create diversity.[2] As long as the party acted before the opposing party or the district court noticed (and before a jury verdict or other dispositive decision), it could single-handedly confer jurisdiction on the federal courts.[3]

The majority opinion creates a new exception to the long-standing rule that diversity jurisdiction is determined at the time the complaint is filed, apparently out of a concern about

---

[2] The majority's holding is utterly out of step with the long-standing principle that the party who files a case in federal court is responsible for establishing jurisdiction. *See Howery v. Allstate Ins. Co.*, 243 F.3d 912, 916 (5th Cir. 2001) ("[T]he burden of establishing federal jurisdiction rests on the party seeking the federal forum."); *Texas Beef Group v. Winfrey*, 201 F.3d 680, 686 (5th Cir. 2000) (same); *Stafford v. Mobil Oil Corp.*, 945 F.2d 803, 804 (5th Cir. 1991) (same). This rule exists because the federal courts are courts of limited jurisdiction. Accordingly, "[w]e must presume that a suit lies outside this limited jurisdiction," until the party seeking the federal forum has proven that his suit belongs in federal court. *Howery*, 243 F.3d at 916.

[3] We have repeatedly declared that parties may not by agreement confer subject matter jurisdiction on the federal judiciary. *Howery*, 243 F.3d at 919 ("[S]ubject-matter jurisdiction cannot be created by waiver or consent."); *Coury v. Prot*, 85 F.3d 244, 248 (5th Cir. 1996) ("The parties can never consent to federal subject matter jurisdiction[.]"). Yet the majority has fashioned a rule that allows *a single party* to confer jurisdiction on the federal courts.

14

judicial economy. The majority stresses that "'[o]nce a diversity case has been tried in federal court, with rules of decision supplied by state law . . . considerations of finality, efficiency and economy become overwhelming.'" There is no question that the conservation of judicial resources is an important value. *Caterpillar*, 519 U.S. at 76 ("'[R]equiring dismissal after years of litigation . . . would impose unnecessary and wasteful burdens on the parties, judges, and other litigants waiting for judicial attention.'") (quoting *Newman-Green*, 490 U.S. at 836).

The problem with the majority's holding is that efficiency appears to be its *only* concern. If that is the case, then the majority's exception cannot be confined to the "narrow" boundaries it has prescribed. After all, parties "commit[] ample resources" to a case long before a jury verdict or a dispositive ruling from the court. The majority opinion states that, under its rule, if one of the parties or the district court discovers a jurisdictional defect prior to the jury verdict, the court should dismiss the case. Yet there is no difference in efficiency terms between the jury verdict and, for example, the moment at which the jury retires. Nor, for that matter, is there a large difference between the verdict and mid-way through the trial. (The trial in this case lasted six days.)[4] Indeed, in complicated cases requiring a great deal of discovery, the parties and the court

---

[4] The only difference is that after a verdict or dispositive ruling, the parties know the result. Atlas focuses on this fact, suggesting that this Court should not allow the "loser" in the case to have it dismissed on jurisdictional grounds. *See* Brief of Appellants at x (characterizing the issue in this case as whether the magistrate erred "in dismissing the case after a jury trial when the *loser* . . . moved to dismiss for lack of jurisdiction") (emphasis added). The majority , correctly enough, does not focus on this factor, apparently recognizing that parties cannot waive the right to challenge the subject matter jurisdiction of the federal courts. Parties may raise that jurisdictional defense at any point, even after judgment is entered. *Coury*, 85 F.3d at 248 ("[L]ack of [federal subject matter] jurisdiction is a defense which cannot be waived."). Indeed, the only party that has an incentive to correct a jurisdictional defect (including one that still exists at judgment) is the party that lost the case. In order for our courts to remain courts of limited jurisdiction, we must, in some cases, rely on the "loser" to catch a jurisdictional defect that should have been caught much sooner.

often expend tremendous resources long before the case goes to trial. There is no principled way to limit a holding based solely on "considerations of finality, efficiency and economy."

Nor is it clear that creating exceptions to our jurisdictional rules would even lead to the conservation of judicial resources. Instead, carving out an exception in one case merely encourages future parties to file more appeals, urging this Court to create more exceptions. *See Saadeh v. Farouki*, 107 F.3d 52, 57 (D.C. Cir. 1997) (refusing to create an exception to "the bright-line rule that citizenship and domicile must be determined as of the time a complaint is filed," and noting that "the instant case demonstrates the value of a bright-line rule; even on appeal the parties continue to develop new theories and proffer new evidence on citizenship and domicile"). We should enforce our procedural rules as strictly as possible, even if that means a waste of judicial resources in a single case. Otherwise, in the long run, we may waste many more judicial resources litigating all the potential exceptions to our previously "clear" jurisdictional rules.[5]

However, regardless how these concerns about judicial economy play out, we cannot fashion jurisdictional rules (or exceptions) solely out of a desire to conserve judicial resources. For we must always keep in mind this central principle: "It is axiomatic that the federal courts have limited subject matter jurisdiction and cannot entertain cases unless authorized by the Constitution and legislation." *Coury*, 85 F.3d at 248. "Obviously, [this] principle[] can result in a tremendous waste of judicial and private resources." *Id.* at 249. But the so-called "waste" of

---

[5] Indeed, we might even waste the time of the parties in an individual case, if the Supreme Court ultimately rejected the exception we carved out. *See E.R. Squibb & Sons, Inc. v. Accident & Cas. Ins. Co.*, 160 F.3d 925, 930 (2d Cir. 1998) ("Nobody's interest would be served if we by stretching the law found jurisdiction to exist, only to have that position ultimately rejected by the High Court.").

16

judicial resources that occurs when we dismiss a case for lack of jurisdiction is the price that we pay for federalism. *Id.*; *see also Herrick Co., Inc. v. SCS Communications, Inc.*, 251 F.3d 315, 330-31 (2d Cir. 2001) ("As the Supreme Court has remarked, '[o]nce a diversity case has been tried in federal court with rules of decision supplied by state law . . . considerations of finality, efficiency, and economy become overwhelming.' . . . At the same time, however, the problems of defective jurisdiction . . . are themselves weighty, being tied to the fundamental constitutional idea that federal courts have only limited jurisdiction[.]") (quoting *Caterpillar*, 519 U.S. at 75). If we make too many exceptions to our jurisdictional rules, parties will cease to believe that any limitations exist. Parties will begin filing cases in federal court that would be more appropriately handled by the state judicial system. The Supreme Court in *Caterpillar* did not intend such a result.

I respectfully dissent.