Mark MASSARELLA Plaintiff

v.

The LANE COMPANY, INC., Lane Furniture Industries, Inc., Fictitious Defendants 1–25 Defendants

No. 1:02CV 99–M–D.

United States District Court,
N.D. Mississippi,
Eastern Division.

Jan. 17, 2003.

Richard Edwin Lamberth, Cunningham Bounds Yance Crowder & Brown, Mobile, AL, for Mark Massarella, As Parent and Personal Representative of the Estate of Natalie M. Massarella, A Deceased Minor, plaintiff.

Wilton V. Byars, III, Daniel, Coker, Horton & Bell, Oxford, MS, for Lane Furniture Industries, Inc., the Lane Company, Fictitous Defendants 1–25, defendants.

### MEMORANDUM OPINION

MILLS, District Judge.

This cause comes before the Court upon the plaintiff's motion to remand this action to state court [7–1]. Upon due consideration, the Court finds that the motion should be granted and this cause remanded for ultimate resolution.

### PROCEDURAL HISTORY

The plaintiff in this case is Mark Massarella ("Massarella"), a Mississippi resident. The defendants include The Lane Company, Inc. ("Lane"), a Virginia corporation; Lane Furniture Industries, Inc. ("LFI"), a Mississippi corporation; and twenty-five other fictitious defendants (collectively "Defendants").

This action was originally filed in the Circuit Court of Lee County, Mississippi. The defendants removed the action, claiming subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a). The defendants aver that Massarella fraudulently joined LFI, a

Mississippi corporation, in order to defeat diversity jurisdiction.

Massarella now moves to remand this case, asserting that LFI was not fraudulently joined, and that the diversity requirements for jurisdiction have not been met. In the alternative, Massarella alleges that Lane, a Virginia corporation, has its principal place of business in the state of Mississippi. Accordingly, Massarella maintains that this Court lacks federal subject matter jurisdiction to adjudicate this action. Neither party argues the existence of a federal question.

### FACTS

Natalie Massarella ("Natalie"), a minor, died of asphyxiation as a result of being trapped in an airtight cedar chest manufactured by Lane. Massarella, Natalie's father and personal representative, subsequently initiated this lawsuit against Lane, LFI and twenty-five other fictitious defendants. Massarella contends that these defendants are liable for the death of Natalie based on various theories of liability.

A grasp of the issues necessitates a summary of the corporate histories of Lane and LFI. Lane was incorporated in Virginia in 1912. In 1987, Furniture Brands International acquired Lane and its two subsidiaries, Action Industries, Inc. ("Action") and Lane Advertising, Inc., through Lane Furniture Industries, a Delaware corporation ("LFI–Del"). At acquisition, Lane owned several divisions, including Lane Manufacturing, Laneventure, Hickory Chair, Pearson and the Royal Development Company ("Royal"). In 1998, Royal was transferred to Action, and Action was later reincorporated in Mississippi. In December of 2001, Action purchased fourteen percent of Lane's assets. Subsequently, in 2002, Laneventure was transferred to Action. Also in this same year, Action created a new division to import

foreign, cedar chests, and Lane Manufacturing ended its manufacturing operations. Thereafter, LFI–Del transferred its ownership of Lane to Action and then dissolved. On January 1, 2002, Action changed its name to LFI.

### LAW

#### I. Standard for Removal

Federal courts have limited jurisdiction. *Atlas Global Group, L.P. v. Grupo Dataflux,* 312 F.3d 168, 176 (5th Cir.2002) (Garza, J., dissenting). District Courts have original jurisdiction of claims "where the matter in controversy exceeds the sum or value of $75,000" and where the "citizens [are] of different States." 28 U.S.C. § 1332(a) (2000).

A defendant may remove a case to federal court if both requirements of diversity jurisdiction have been met. 28 U.S.C. § 1441(a) (2002). Upon removal, the defendant bears the burden of establishing federal jurisdiction. *Atlas Global Group, L.P.,* 312 F.3d at 176.

#### II. Standard for Remand

A plaintiff may move to remand the case if the federal court appears to lack subject matter jurisdiction. 28 U.S.C. § 1447(c) (1994). Courts resolve removal doubts in favor of remand. *Boston v. Titan Indem. Co.,* 34 F.Supp.2d 419, 423 n. 21 (N.D.Miss.1999) (citations omitted), *appeal dismissed without op.,* 199 F.3d 437 (5th Cir.1999).

#### III. Diversity Jurisdiction

Diversity jurisdiction is determined by the citizenship of the parties at the time the lawsuit is filed. *Harris v. Black Clawson Co.,* 961 F.2d 547, 549 (5th Cir.1992). A corporation is considered a citizen both of the State of its incorporation and of the

State in which it has its principal place of business. 28 U.S.C. § 1332(c) (1994)

■ The determination of where a corporation has its principal place of business is "a factual inquiry, dependent on a number factors." *Howery v. Allstate Ins. Co.,* 243 F.3d 912, 920 (5th Cir.2001), *cert. denied,* 534 U.S. 993, 122 S.Ct. 459, 151 L.Ed.2d 377 (2001). Such factors include "the nature, location, importance, and purpose of a corporation's activities and the degree to which those activities bring the corporation into contact with the local community." *Howery,* 243 F.3d at 920 (citations omitted). Collectively, these factors comprise the "total activity test," which is a synthesis of both the "place of activity" test and the "nerve center test." *Id.*

IV. *Fraudulent Joinder*

■ Diversity jurisdiction can be obtained by proving fraudulent joinder of an in-state defendant. *Dodson v. Spiliada Maritime Corp.,* 951 F.2d 40, 42–43. A "heavy burden" of proof rests on the removing party. *Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.,* 313 F.3d 305, 312 (5th Cir.2002) (citations omitted). The removing party must "demonstrate either outright fraud in the 'plaintiff's recitation of jurisdictional facts,' or that there is 'absolutely no possibility that [the plaintiff] will be able to establish a cause of action against [the allegedly fraudulently joined in-state defendant] in state court.'" *Landers v. Midland Nat'l Life Ins. Co.,* No. 1:02CV179–D–D, 2002 WL 31371948, at *1 (N.D.Miss.2002) (citations omitted). State law determines whether a removing party may be successful on a fraudulent joinder claim. *Hart v. Bayer Corp.,* 199 F.3d 239, 246 (citations omitted). Initially, a court resolves all disputed questions of fact and any ambiguity of state law in favor of the non-moving party. *Id.* If any possibility exists that the

plaintiff may recover against the party whose joinder is questioned, then the party was properly joined. *Id.*

## DISCUSSION

Two issues must be addressed. First, whether Lane's principal place of business is within Mississippi. Second, whether LFI, a Mississippi corporation, was properly joined as a defendant by Massarella. If either issue is affirmatively decided, then this Court lacks jurisdiction to adjudicate this action.

I. *Principal Place of Business*

In *J.A. Olson Co. v. City of Winona,* 818 F.2d 401, 404–13 (5th Cir.1987), the Fifth Circuit articulated the "Total Activity Test" to determine the location of a corporation's principal place of business. This test is multi-factored, and the Fifth Circuit has explained that it is one of balancing. The factors include "the nature, location, importance, and purpose of a corporation's activities and the degree to which those activities bring the corporation into contact with the local community." *Howery v. Allstate Ins. Co.,* 243 F.3d 912, 920 (5th Cir.2001), *cert. denied,* 534 U.S. 993, 122 S.Ct. 459, 151 L.Ed.2d 377 (2001).

■ The parties disagree as to the location of Lane's principal place of business. The filed affidavits establish the following operative facts:

Lane contends that its principal place of business is Virginia. In support of this contention, Lane submitted the affidavit of Al Jackson ("Jackson"), who is the Assistant Treasurer for Lane. Jackson asserts that Lane has employees in Virginia, owns property in Virginia and conducts its day-to-day operations in Virginia. Jackson states that Lane is not qualified to do business in Mississippi and that Lane has no employees or property in Mississippi.

Massarella alleges that Lane's principal place of business is Mississippi. In support of this contention, he submitted the affidavit of Shawn Rumsey ("Rumsey"). Rumsey stated that on April 9, 2002, he called Lane's office in Altavista, Virginia and received an automated message referring customers to Lane's main office in Tupelo, Mississippi. The message also indicated that Lane's repair and sales divisions had been relocated to Mississippi.

The balancing court must have facts sufficient to weigh in order to find the truth. These affidavits lack sufficient facts to consider properly the *Olson* factors. There is no evidence showing where Lane's primary financial and other management decisions are made, where Lane's corporate records and major bank accounts are maintained or where Lane's significant business decisions are made (e.g. hiring and firing of employees or employee grievances and workers compensation matters). *See J.A. Olson Co.*, 818 F.2d at 413 (discussing the importance of these factors in determining where a corporation's nerve center is located). Thus, while this Court finds that Lane's main office is in Tupelo, Mississippi, this Court cannot conclusively determine that Mississippi is the location of Lane's "nerve center."

This Court lacks facts necessary to determine the location of Lane's primary activity, i.e. the manufacturing of furniture. This labor-intensive activity occurs, at least in part, in Virginia, where Lane's day-to-day operations are conducted. However, this does not exclude the possibility that Lane's manufacturing activity also occurs, at least in part, at its sales and repairs divisions in Mississippi. This is an unanswerable question, since Lane steadfastly denies having any employees or property in Mississippi. For this reason, this Court cannot definitively determine that Lane's manufacturing activity is more extensively conducted in Virginia than in Mississippi.

The majority of Lane employees are located in Virginia. Lane conducts its day-to-day operations in Virginia, and Lane's activities probably bring it into significantly greater contact with the Virginia community than the Mississippi community. Therefore, Virginia is where Lane is "most visible," i.e. "where [Lane] has its most substantial investment, and indeed is where, more than any other place, [Lane's] corporate purpose is fulfilled." *J.A. Olson Co.*, 818 F.2d at 413. However, this one factor is not sufficient to make Virginia the location of Lane's principal place of business.

Lane, as the removing party, bears the burden of proving that federal jurisdiction exists. *Atlas Global Group, L.P. v. Grupo Dataflux*, 312 F.3d 168, 176 (5th Cir.2002). There are still a number of unanswered questions vital to the determination of whether diversity jurisdiction exists. Since Lane failed to meet its burden of proof, remand is proper. *Boston v. Titan Indem. Co.*, 34 F.Supp.2d 419, 423 n. 21 (N.D.Miss.1999) (citations omitted), *appeal dismissed without op.*, 199 F.3d 437 (5th Cir.1999).

## II. *Fraudulent Joinder*

■ Even if Lane's principal place of business was Virginia, diversity jurisdiction still would not exist unless Lane could prove that LFI was a fraudulently joined party. In order to be successful on this claim, Lane had to "demonstrate either outright fraud in the pleadings of jurisdictional facts or that there is no possibility that [the plaintiff] would be able to establish a cause of action against [the allegedly fraudulently joined defendant] in state court." *Landers v. Midland Nat'l Life Ins. Co.*, No. 1:02CV179–D–D, 2002 WL

31371948, at *1 (N.D.Miss.2002) (citations omitted).

Although Massarella asserts numerous theories as to LFI's liability, the only one that merits discussion is the "successor liability theory." Generally, a successor corporation does not assume the liabilities of the predecessor corporation from which the assets are acquired. *Mozingo v. Correct Mfg. Corp.*, 752 F.2d 168, 174 (5th Cir.1985) (citations omitted). However, there are recognized exceptions. The successor corporation will assume the liabilities of the predecessor when: (1) the successor expressly or impliedly agrees to assume the liabilities; (2) the transaction may be considered a de facto merger; (3) the successor may be considered a mere continuation of the predecessor; (4) the transaction was fraudulent. *Mozingo*, 752 F.2d at 174.

It is possible that LFI may be the mere continuation of Lane. In *Huff*, the Supreme Court of Mississippi listed the elements necessary to prevail on a "product line theory" of liability, which is an expansion of the mere continuation exception. *Huff v. Shopsmith, Inc.*, 786 So.2d 383, 387 (Miss.2001). Such elements include "[t]he successor [producing] the same product under a similar name, [acquiring] substantially all of the predecessor's assets leaving no more than a corporate shell, [holding] itself out to the public as a mere continuation of the predecessor, and [benefitting] from the good will of the predecessor." *Id.*

There is no question that LFI produces the same product as did Lane. By the defendants' own admission, "The Lane Manufacturing Division of Lane was allowed to end its manufacturing operations. A new division of [Action] was created to import cedar chests from overseas ... On January 1, 2002, [Action] changed its name to [LFI] ...."

It is also possible that LFI holds itself out to the public as a mere continuation of Lane. The Court notes that on Lane's own web page, it states, "**Lane** has many great domestic and international opportunities for talented and creative people ..." and then provides that "interested parties should fax their resume to # 662–566–3474." *See http: //www.lanefurniture.com/corporate/employment.html* (emphasis added). Interestingly, the number given is a Tupelo, Mississippi phone number, the exact city in which LFI is located. Additionally, this Court notes that Massarella may be able to prove that LFI has held itself out to the public as a mere continuation of Lane by virtue of the numerous transfers of divisions and purchases of assets undertaken by Lane and LFI throughout the years.

It is also possible that LFI has acquired substantially all of Lane's assets, leaving Lane as nothing more than a corporate shell. Lane concedes that LFI has acquired the Lane Manufacturing Division of Lane and the Royal Development Division of Lane. Furthermore, Lane readily admits that LFI–Delaware, which was the parent company of Lane and Action, "transferred its ownership of Lane to [Action]," which subsequently changed its name to LFI. Also, Lane admits that LFI has additionally acquired fourteen percent of its other assets. Finally, although Lane asserts that "it has significant income and assets," it did not produce any evidence to prove this assertion. Instead, Lane stated that it would produce a proper balance sheet "upon entry of an appropriate protective order." Without evidence to the contrary, this Court concludes that there is a possibility that Massarella may succeed on proving that Lane is nothing more than a corporate shell.

In sum, Lane did not meet its burden of proving that Massarella has no possibility

436

of recovery against LFI. Thus, LFI is a proper party defendant, and diversity jurisdiction is defeated. Remand is therefore proper. A separate order to that effect shall issue this day.

### ORDER GRANTING MOTION TO REMAND TO STATE COURT

Pursuant to a memorandum opinion issued this day, it is hereby **ORDERED THAT**:

1) the plaintiff's motion to remand [7–1] is hereby **GRANTED**;

2) this cause is hereby **REMANDED** to the Circuit Court of Lee County, Mississippi.